| 75 | 613 |
|-----|-----|
| 103 | 667 |
| 75 | 613 |
| 110 | 303 |
| 75 | 613 |
| 117 | 208 |
| 75 | 613 |
| 70a | 628 |
| 75 | 613 |
| 150 | 423 |
| 75 | 613 |
| 156 | 617 |

## LINCOLN, *Appellant*, v. THOMPSON.

1. **Sheriff's Deed**: CERTIFICATE AND RECORD ENTRY OF ACKNOWLEDGMENT. It is not the intention of the law in relation to sheriffs' deeds that the clerk's certificate of acknowledgment indorsed on the deed shall be a copy of the entry made on the record. The former should contain but a brief statement of the fact of acknowledgment; the latter must set forth, in addition, the names of the parties to the suit and a description of the property conveyed. R. S. 1879, § 2394.

2. ———: ACKNOWLEDGMENT. As against a purchaser for value and without notice of an execution sale, a sheriff's deed made in pursuance of the sale but not acknowledged till thirteen years afterward, will not be allowed to take effect as of the time of the sale.

3. **Possession, as Notice of Claim.** Possession may in some cases be evidence of a claim; but when a particular claim is notorious and is sufficient to account for a possession, no one is called on to speculate as to the existence of some other claim.

4. **Sheriff's Deed**: VARIANCE BETWEEN DEED AND CERTIFICATE OF ACKNOWLEDGMENT. A deed running in the name of G. as sheriff, and executed by him, recited, among other things, that the execution was delivered to L., "then sheriff" of C. county, that L., after making a levy, transferred the execution to G. "as his successor in the said sheriffalty, upon the expiration of his (L.'s) term of office," and that G. "sheriff as aforesaid" gave notice and made the sale. The clerk's certificate of acknowledgment indorsed upon the deed on the day of its date, stated that L., "sheriff of C. county," produced "a deed executed by himself as sheriff as aforesaid    *
     * and said sheriff acknowledged said deed to be his act and deed." *Held*, (by GANTT, Special Judge, HOUGH and HENRY, JJ., concurring; SHERWOOD, C. J., and RAY, J., dissenting,) that in the absence of any evidence tending to show that it was really G., and not L., who acknowledged the deed, it could not be held that the appearance of L.'s name in the clerk's certificate was a clerical error. Whether the court could have heard such evidence, if it had been offered, was not decided.

5. **Limitations.** A plea of limitations should always refer to the commencement or the proceedings supposed to be barred, not to any subsequent date.

*Appeal from Clay Circuit Court.*—HON. GEORGE W. DUNN, Judge.

REVERSED.

*James E. Lincoln* and *Wash Adams* for appellant.

The deed made and signed by Gittings as sheriff, but acknowledged by Long, is a nullity. The certificate of acknowledgment characterizes Long as sheriff, and it is so stated in the body of the deed. Long made the levy as sheriff, and under the law then could have made the sale and deed as ex-sheriff and properly acknowledged it. It is evident that he acknowledged the deed under the belief that it was his duty to do so. Will a court by construction set aside and annul the plain averments of an acknowledgment? It may supply defects and even make changes when the context indicates the intention on its face. But no case is cited holding that a court will contradict and destroy the plain and positive statements of an acknowl-

edgment, and by construction supply their place with other and totally different statements. The legal acknowledgment of a sheriff's deed is essential to its validity and no title can pass without it. *Ryan v. Carr*, 46 Mo. 486; *Adams v. Buchanan*, 49 Mo. 71; *Cabell v. Grubbs*, 48 Mo. 356; *Allen v. King*, 35 Mo. 224, 225. The certificate of acknowledgment indorsed upon the deed itself must be within and of itself complete and no extrinsic evidence can be invoked to eke out its recitals. *McClure v. McClurg*, 53 Mo. 174; *Samuels v. Shelton*, 48 Mo. 447, 448; *Ware v. Johnson*, 55 Mo. 500; *Chauvin v. Wagner*, 18 Mo. 531. This deed not having been acknowledged according to law, its record did not impart constructive notice. If not acknowledged or proved its record is not provided for by law, and the fact that it may be copied upon the book of records will not operate as constructive notice to subsequent purchasers. *Stevens v. Hampton*, 46 Mo. 404; *Bishop v. Schneider*, 46 Mo. 480; *Musick v. Barney*, 49 Mo. 458; 44 Mo. 247; *Cass Co. v. Oldham*, ante, p. 50.

Mrs. Thompson's possession was not notice to Lincoln of the purchase by the bank and Reid. It was accounted for by the fact that she was Jas. T. V. Thompson's wife, and also was consistent with the Tillman deeds, which were of record. Lincoln was not bound to inquire further. *Smith v. Yule*, 31 Cal. 183; *Meehan v. Williams*, 48 Pa. St. 241; *Billington v. Welsch*, 5 Binn. 129; *Rogers v. Jones*, 8 N. H. 264, 271; *Bell v. Twilight*, 2 Foster (N. H.) 522; *Coleman v. Barklew*, 3 Dutch. 357; *Emmons v. Murray*, 16 N. H. 398; *Patten v. Moore*, 32 N. H. 385; *Hewes v. Wiswell*, 8 Greenl. 98; *Mathews v. Demerritt*, 22 Me. 315, 316; *Butler v. Stevens*, 26 Me. 484; *Clark v. Morris*, 22 Ill. 434; *Bogue v. Williams*, 48 Ill. 371; *Brown v. Volkening*, 64 N. Y. 83; *Odle v. Odle*, 73 Mo. 294.

The record of the quit-claim deed from Reid and the bank to Mrs. Thompson was not constructive notice of the title claimed by them. It referred to the dower agreement in an indefinite way, but not to the sheriff's deed to them.

So far as the record goes, it was an isolated deed, not in the line of title at all, and, therefore, not notice to any one who had not actual knowledge of it.   *Crockett v. Maguire*, 10 Mo. 37 ; *Digman v. McCollum*, 47 Mo. 374 ; *Keller v. Nutz*, 5 Serg. & R. 246 ; *Maul v. Rider*, 59 Pa. St. 171 ; *Ely v. Wilcox*, 20 Wis. 530 ; *Day v. Clark*, 25 Vt. 402 ; *Hutchinson v. Harttmann*, 15 Kas. 142.

Lincoln, being a judgment creditor, buying at his own sale, is within the protection of the recording act.   *Hill v. Paul*, 8 Mo. 482, 483 ; *Helm v. Logan*, 4 Bibb 78 ; *Reed v. Austin*, 9 Mo. 722 ; *Evans v. McGlasson*, 18 Iowa 150 ; *Halloway v. Platner*, 20 Iowa 121 ; *Gower v. Doheney*, 33 Iowa 36 ; *Fash v. Ravesies*, 32 Ala. 451 ; *Grace v. Wade*, 45 Texas 529 ; *Maupin v. Emmons*, 47 Mo. 306 ; *Draper v. Bryson*, 26 Mo. 108 ; *Ryland v. Callison*, 54 Mo. 513 ; *Matson v. Capelle*, 62 Mo. 235 ; *Ford v. French*, 72 Mo. 250 ; *De Witt v. Harvey*, 4 Gray 486 ; *Harrison v. Hollis*, 2 Nott & M. 578 ; *Sevier v. Ross*, 1 Free. Ch. 519 ; *Duval v. Waggener*, 2 B. Mon. 183 ; *Emerson v. Littlefield*, 12 Me. 148 ; *Curd v. Lackland*, 49 Mo. 454.   That he had no notice of the deed to Reid and the bank, we think the record abundantly shows.

*Washington Adams* and *Charles A. Winslow* also for appellant.

*Glover & Shepley* for respondents.

1.   The certificate of acknowledgment to the Gittings deed is good.   The statute does not require the name of the sheriff to be mentioned in the certificate.   The name of Long may, therefore, be treated as stricken out.   The law assumes that the court, clerk and sheriff know each other ; and it is legally enough to state in any order that the sheriff or clerk of the court has done, or shall do this, or that, and it has never been considered necessary nor is it the custom to insert the name of any officer, whether judge, sheriff or clerk, in record entries, when their acts are noted.   We may go further and say : that if this court

should make an entry ordering the clerk of this court, John Smith by name, to do a certain thing, the order would be binding on the clerk of the court, though his true name is Henry W. Ewing. In such a case the name John Smith would be a self-evident mistake, and be disregarded. *Ingram v. State*, 37 Ala. 17; *Major v. State*, 2 Sneed (Tenn.) 11; Bliss Code Plead., § 195 ; *Thompson v. Hascall*, 30 Ill. 215; *Dyer v. Flint*, 21 Ill. 80; *Norvell v. McHenry*, 1 Mich. 227; *Laughlin v. Stone*, 5 Mo. 43. Now, if it be a presumption of law that the court always knows its own sheriff, it is impossible that Francis R. Long acknowledged this deed, because the pleadings admit that he was not the sheriff at the time. The same legal presumption forces the conclusion that Darius Gittings did make the acknowledgment, because he was sheriff at the. time; and the court knew it, and knew him and knew that he acknowledged the deed.

2. It is a maxim of the common law that the presence of the body takes away error in the name. *Praesentia coporis tollit errorem nominis.* Broom Leg. Max., 639. Applied to the case at bar, this means that since the court knew Darius Gittings, and knew that he was sheriff of Clay county, therefore, it was Darius Gittings who appeared there in the body and acknowledged the deed. Such being the fact, the misnomer will not make the deed void.

3. Another rule of interpretation relieves this transaction of question. It is this: Words to which reference is made in any instrument have the same effect and operation as if they were inserted in the clause referring to them. Broom Leg. Max., 673. Instruments that refer to each other must be read together and be considered as one. *Doe v. Barnard*, 9 Sm. & M. 319; *Cornell v. Todd*, 3 Denio 130; *Daniel v. Veal*, 32 Geo. 589; *Petty v. Boothe*, 19 Ala 633; and when so taken and considered the intent shown by the whole shall prevail. *Gibson v. Bogy*, 28 Mo. 478; *Brownlee v. Arnold*, 60 Mo. 79; *Lewis v. Ins. Co.*, 3 Mo.

App. 372; *Bradford v. Dawson*, 2 Ala. 203. Here the certificate of acknowledgment refers to the deed as made by the sheriff who acknowledged it. On examination of the deed that person is shown to be Darius Gittings. It also shows that Francis R. Long made the levy, but did not sell because his term of office expired; that Darius Gittings did sell and made his return of sale, and made the deed; and that the person who made it was the person who acknowledged it; therefore, the certificate and deed, taken together, show that Darius Gittings acknowledged the deed.

4. A sheriff's conveyance of land must be deemed as one act, composed of several parts, viz: Judgment, execution, levy, sale, return, deed and acknowledgment, all of which are essential to the conveyance. Such being the case, the court must look through them all, and see if an error at one place is not explained by a true statement at another. It is a familiar rule of pleading, that when the true name, sum, date or description is once stated, that will correct a misstatement of such a matter. R. S. 1879, § 3582. This is the suggestion of common sense, and applies to deeds and records as well as pleadings. Let us apply this rule. The record here says the name of the person who sold the land was Darius Gittings; it says then, virtually, that Darius Gittings made the deed. It says that Long went out of office and Gittings was his successor as sheriff; and that the man who acknowledged the deed was sheriff of Clay county.

5. If the sheriff's deed to the bank and Reid was not legally acknowledged in 1865, it was not, therefore, void. It was ready to be acknowledged and when acknowledged in 1878 it became operative and vested title in the grantees by relation to the date of sale in 1865, as between the parties to it and all having actual notice of it. *Porter v. Mariner*, 50 Mo. 364; *Leach v. Koenig*, 55 Mo. 451; *Wallace v. Lawrence*, 1 Wash. 503. The evidence, we claim, shows that Lincoln had notice.

*J. E. Merryman* also for respondents.

The deed of the sheriff, Gittings, passed the title to the Farmers' Bank and Reid. The clerk committed a clerical error in transcribing the order of acknowledgment by inserting the name of F. R. Long as sheriff instead of Darius Gittings, the sheriff who made the sale and executed the deed. When the certificate of acknowledgment is inconsistent with the deed, and ambiguous, the court will look to the deed, or any part of it, together with the certificate, in order to arrive at the true meaning of the officer, which is that Gittings, not Long, made the acknowledgment. *Carpenter v. Dexter*, 8 Wall. 526; 45 Md. 395; *Samuels v. Shelton*, 48 Mo. 447, 448; *Wise v. Postlewait*, 3 W. Va. 452; *Sanford v. Bulkley*, 30 Conn. 344.

The only relief that appellant demands in his petition is, that the sheriff's deed to Tillman and the deed from Tillman to Calhoun, as trustee for respondent, be set aside, when respondent in her answer, filed in September, 1874, notified him that she held under the dower contract and the title of the bank and Reid; and she again reiterates her claim in her answer filed on the 28th day of January, 1878. Therefore, he cannot assail a title not attacked in the petition. *Bankston v. Farris*, 26 Mo. 175. Defendant Emily Thompson relies on the statute of limitation. She avers in her answer that she has been in peaceable possession of the property, openly and notoriously living on it and claiming it as her own, under the contract made with the trustees and the beneficiaries in said deed of trust, and the junior judgment creditors, and under the deed of the bank and Reid, made on the 31st day of October, 1867; and that ever since that time she has held, used and enjoyed said property under the titles aforesaid, and under no other title; and plaintiff never did attack said titles till the 28th day of February, 1878, and only by his replication to defendant's answer. Therefore, more than ten years having elapsed before the deed was attacked, she is protected by

the statute of limitations; nor can plaintiff, Lincoln complain, because before the ten years elapsed, to-wit: on the 15th day of September, 1874, he was notified by defendant that she held the property under the title above stated. *Dudley v. Price*, 10 B. Mon. 84; *Christmas v. Mitchell*, 3 Ired. Ch. 535; Angell on Limitations, (6 Ed.) § 330, notes 3, 13. Defendant claims that the sheriff''s deed to Tillman, and his deed to Calhoun, as trustee for her, if ever tainted with fraud, has been purged of all fraud by her contract with the trustees and the beneficiaries, and the junior judgment creditors, and her deed from the bank and Reid, which were and are valid contracts, made for the benefit of the creditors of Thompson; that Tillman paid over $6,000 for the property, and she, as aforesaid, purchased it again; and, by reason of the contracts, all fraud has been wiped out, and the title made perfect. *Oriental Bank v. Haskins*, 3 Met. 332; 5 B. Mon. 327; Bump on Fraud. Convey., 225; 2 Pick. 198; 1 John. Ch. 271; 32 Ohio St. 320.

GANTT,* SPECIAL JUDGE.—The original petition in this cause does not appear in the transcript, but it is admitted that the suit was commenced to the March term, 1874, of the Clay circuit court, and on the 20th day of December, 1877, an amended petition was filed, on which, with the answers thereto and the reply, the cause was tried at the February term, 1878. By the amended petition it was charged that James T. V. Thompson was in 1864 seized of the land in controversy. It contained about 200 acres and may be called he Thompson Home Place. Under a judgment obtained 2nd of May, 1862, which was alleged to have been revived from time to time, the plaintiff received, in September, 1870, a sheriff's deed duly executed and acknowledged, conveying to him all the interest of said Thompson to this land. The petition went on to state that in 1864, Thompson, being in embarrassed circumstances, and many unsatisfied judgments standing against

---

*Hon. Thos. T. Gantt, late Presiding Judge of the St. Louis Court of Appeals.

him, procured to be issued executions thereunder, and caused one E. C. Tillman, a brother-in-law, to become, at sheriff's sale, the purchaser of this tract of land, and to receive a deed therefor from the sheriff; that this deed was dated the 28th of April, 1864; that the money for this purpose was furnished by Thompson, and that on receiving the sheriff's deed, Tillman executed an agreement in writing to convey the property to A. J. Calhoun in trust for Emily W. Thompson, wife, and James P., John D. and Anna R. Thompson, children of said James T. V. Thompson. In 1872 Tillman made such a conveyance accordingly. James T. V. Thompson died in 1872. It was alleged that the deed to Tillman and the conveyance to Calhoun were part of a fraudulent contrivance on the part of James T. V. Thompson to assure this real estate to his wife and children in fraud of his creditors; and the plaintiff prayed that the deed might be set aside and himself put in possession of the land which had constantly been occupied by Thompson in his lifetime and by his widow and children since his death.

James P Thompson had died   The suit was instituted against Emily W. Thompson, John D. and Anna R. Thompson and their trustee A. J. Calhoun. The trustee and the minor children filed a general denial.

Emily W. Thompson answered separately and specially. She denied all the fraud charged in connection with the deed to Tillman, and alleged that the purchase by him was effected with money to her belonging, arising from her separate estate. Further, she set up a purchase from the Farmers' Bank of Missouri and Jno. W. Reid of this property in 1867. She said that they had purchased it at sheriff's sale from Thompson in April 1865, and had received therefor a sheriff's deed duly executed and acknowledged. This deed was alleged to be lost, and a copy was filed as an exhibit. It was alleged further that in 1862 Thompson, being largely indebted, had executed a deed of trust or mortgage to A. W. Doniphan and A. J Calhoun

to secure certain of his creditors; that this deed was afterward foreclosed by the Clay circuit court, and a decree made for the sale of the real estate therein described, to pay these creditors; that prior to the making of the decree, Doniphan and Calhoun, together with the judgment creditors of Thompson, on the one hand, agreed with Emily W. Thompson, on the other, that she should relinquish her dower in all the land sold, and that she should receive in consideration of such relinquishment one-sixth of the proceeds of the sales, and a deed from the Farmers' Bank of Missouri and Jno. W. Reid for the Thompson Home Place. This agreement was alleged to have been in writing and signed by the judgment creditors of Thompson, the plaintiff included, but to have been lost. The answer went on to say that this agreement had been carried out; that defendant had released her dower to all the land sold, thereby much increasing the price realized therefor; that she had received one-sixth of the proceeds, and also from the Farmers' Bank of Missouri and Jno. W. Reid a conveyance of the home place bearing date 31st of October, 1867; that ever since that time she had relied on the title thus acquired, holding the property adversely to all the world; that this adverse possession had continued uninterruptedly for ten years; and she pleaded this lapse of time as a bar to plaintiff's prayer for relief.

To this answer plaintiff replied on 28th of February, 1878, having on the 23rd moved to strike from it, as inconsistent and antagonistic with the defense of the Tillman transaction, all that was said respecting the acquisition of the title of the Farmers' Bank of Missouri and Jno. W. Reid. He denied the making of a deed by the sheriff to these grantors; denied the existence of the judgment, the making of the sale alleged to have occurred in April, 1865, the execution and acknowledgment of the sheriff's deed.

It is stated in the transcript that the case was called for trial on the 2nd of March, 1878. This seems to be a

clerical error, for the second day of the trial appears to have been March 1st, 1878.

. The plaintiff put in evidence the sheriff's deed to him. There was some discussion as to the revival of the judgment under which this deed was made, so as to preserve the lien of it from the day when it was rendered. The circuit court held that an unbroken lien had not been preserved. No error is seen in this ruling; but it does not affect the conclusions reached by this court.

The plaintiff then put in evidence the deed to Tillman and his conveyance to Calhoun. He supplemented these with other testimony, which leaves no doubt as to the character of that transaction. The money bid by Tillman was paid by Thompson. Mrs. Thompson had no separate estate, and the conveyances by which she claimed the home place under Tillman and Calhoun were void as against the creditors of J. T. V. Thompson. It was proved that the plaintiff was not a party to what may be called the "dower contract." He knew nothing of its tenor, and nothing to impart notice of its existence. At the sale under the foreclosure it was announced that Mrs. Thompson would release her dower to all the land sold under the decree of foreclosure.

The defendant offered in evidence what was called a sheriff's deed, purporting to have been made pursuant to a sale of all Jas. T. V. Thompson's interest in the home place on the 26th of April, 1865. There was a subsisting and unsatisfied judgment against Thompson, on which an execution was issued June 2nd, 1864, and placed in the hands of Francis R. Long, sheriff of Clay county, on June 5th, 1864. He levied this writ on the home place. Apparently Long was succeeded in office by Darius Gittings, but when the one ceased to be, and the other became sheriff, does not appear. Gittings seems to have made sale of the home place under this writ, in April, 1865, under the levy previously made in 1864 by Long. He executed a deed reciting the judgment, execution, advertisement and sale

on the 26th of April; and judging from the only *indicia* before us, Long on that day produced this deed in court, claimed that he had executed it as sheriff, and acknowledged it. This paper itself was not produced; it was alleged to have been lost; a copy, or what professed to be a copy, from the books of the recorder of deeds for Clay county, was produced and seems to have been unchallenged so far as its claims to be a copy of the deed are concerned. How it came to be admitted to record by the recorder of deeds, we are not told, nor when this occurred. There is a memorandum under the clerk's certificate of the acknowledgment by Long, that it was "filed April 27th, 1865," but there is nothing to show who made this memorandum.

This paper can with no propriety be called a sheriff's deed; for until such an instrument has been executed, acknowledged and certified as the law directs, it has no validity. The plaintiff objected to it for these reasons, and the circuit court sustained the objection. The defendant then asked to be allowed to have this assumed copy acknowledged *nunc pro tunc* by Darius Gittings, late sheriff of Clay county, present in court, and this the court permitted, and allowed the instrument thus acknowledged to be read, against the exception of the plaintiff.

Up to this time the only certificate on the paper was in the following terms:

STATE OF MISSOURI, }
    COUNTY OF CLAY. }

Among the records and proceedings of the circuit court begun and held at the court house in the city of Liberty, in the county of Clay, on the 26th of April, 1865, and on the third day of said term the following were had, to-wit: "Be it remembered, that on this 26th day of April, 1865, comes Francis R. Long, sheriff of Clay county, in the State of Missouri, and produces a deed executed by himself as sheriff as aforesaid to the Farmers' Bank of

Lincoln v. Thompson.

Missouri and Jno. W. Reid, jointly, for the following described real estate," (here follows the description,) "and said sheriff acknowledges said deed to be his act and deed for the uses and purposes therein mentioned, and the same is ordered to be certified on said deed accordingly."

Then follows a certificate by the clerk under the seal of court declaring the foregoing to be a full, true and perfect copy of the acknowledgment by the sheriff in open court; below which appears the words: "Filed 27th of April, 1865," without more. On the 9th of January, 1878, the recorder of deeds for Clay county certified this paper to be truly copied from his records. The acknowledgment of this paper, which the circuit court at the trial permitted Darius Gittings to make, bears date March 1st, 1878, and recites that Darius Gittings, late sheriff, etc., produces a deed (not a copy of a deed) executed by him, etc., etc., and acknowledges it accordingly. On the same 1st of March, 1878, Darius Gittings appears to have acknowledged this same paper to be his act and deed. On this last occasion he acted as an individual, not as sheriff. The paper thus acknowledged was then read in evidence against the exception of the plaintiff, and, this being all the evidence, the circuit court dismissed plaintiff's bill. After the usual motions he appealed to this court.

We are struck by the form of the certificate indorsed on both of the deeds before us; as well that relied on by the plaintiff, as that adduced by defendant. The law governing the acknowledgment of deeds executed by a sheriff upon the sale of lands under execution, has been unchanged for more than sixty years. The statute has always directed that the sheriff * * executing any deed for lands, etc., sold by virtue of any execution, shall acknowledge the execution thereof before the circuit court, * . * " and the clerk of such court shall indorse upon such deed a certificate of such acknowledgment under the seal of the court; and shall make an entry of such acknowledgment

1. SHERIFF'S DEED: certificate and record entry of acknowledgment.

40—75

*    *    with the names of the parties to the suit, and a description of the property thereby conveyed," etc., etc.   R. S., p. 179, §§ 2393, 2394.   It seems very clear that the first thing to be done by the sheriff, after making a sale, is the execution of a deed to the purchaser; but if he stops here, the purchaser may take nothing.   An indispensable solemnity is the acknowledgment (or proof) of this deed in open court.   The clerk must then certify upon the deed that it has been so acknowledged (or proved) and this certificate must be under the seal of court.   The deed is then complete and ready for delivery.

But the additional duty is laid on the clerk to "make an entry," (upon the records of the court) "of such acknowledgment    *    *    with the names of the parties to the suit, and a description of the property thereby conveyed," etc., etc.   The words italicized are no part of the acknowledgment; they are something supplemental to it, which the clerk is directed to enter of record.   They should not be indorsed upon the deed.   The certificate of acknowledgment indorsed upon that instrument, is the original, authentic, evidence of the act of the sheriff.   This certificate cannot be aided, if defective in any particular, by reference to the entry upon the record, (*Samuels v. Shelton*, 48 Mo. 444; *Adams v. Buchanan*, 49 Mo. 64; *McClure v. McClurg*, 53 Mo. 173;) nor will it be invalidated because that entry is defective.   *Scruggs v. Scruggs*, 41 Mo. 242.   Instead of this order being observed in the deeds before us, it would seem that the entry upon the record was first made, and that then an order followed that this entry should be certified, or indorsed, on the deed.   This is a cumbrous, unnecessary and dangerous departure from the directions of the statute.   The certificate of acknowledgment indorsed on the deed, and the entry on the record, were not intended by the law-makers to be copies of each other.   The certificate of acknowledgment itself may be and should be very brief.   It need not, and should not, contain a description of the property conveyed.   *That* is

already given with particularity in the body of the deed itself. Neither should it name the parties to the execution under which the sale was made. *That* also the deed itself shows. But the entry on the record *should* contain these particulars: first, because the statute so directs, and secondly, because their mention on the record answers an intelligible and useful purpose. The distinction between the certificate indorsed upon the deed, and the entry on the record enjoined upon the clerk, is pointedly shown in *Samuels v. Shelton*, 48 Mo. 444. The form of the certificates adopted in the deeds before us is careless, and we think dangerous; but we will not pronounce it so irregular as to be void.

Our opinion as to the deed to Tillman and his conveyance to Calhoun, has been already intimated. In substance, Thompson himself, as far as his creditors are concerned, was the purchaser on this occasion.

The deed to Emily W. Thompson from the Farmers' Bank and Jno. W. Reid, is a very carefully guarded deed of quit-claim, conveying industriously only such title as the grantors had. They do not even cite the deed by which they derived title to the land; but describe the property as being the same which was sold to Tillman. On looking at the paper constituting their title, we see that it is neither the deed of Sheriff Gittings nor of Sheriff Long. The one did not acknowledge, the other did not execute it. It is among the unexplained puzzles of this case how it came to pass that this paper was admitted to record at all. Certainly no law with which we are familiar entitled it to be recorded, or made either the paper itself, or a copy of it, evidence. What especially excites our curiosity is the evidence by which it was made to appear that this paper was an authentic copy of anything. Gittings appears to have regarded it as an original document; which it confessedly was not. It was, however, received as a copy of a paper executed by Gittings and acknowledged by Long in 1865, the original being alleged to be lost, and this copy

Lincoln v. Thompson.

Darius Gittings was permitted to acknowledge as his deed. When he had done this the circuit court seems to have considered that the acknowledgment related back to the 26th of April, 1865.

One difficulty here seems serious. No paper which Gittings had ever seen before was produced, but something purporting to be a copy of a deed executed by him nearly thirteen years before. He declared this paper to be his act and deed and spoke of having executed it. At most, it could only have been a copy of something he had formerly executed. It seems wholly inadmissible to admit this instrument as evidence of a deed validated by relation, so as to take effect from the 26th of April, 1865. Plaintiff had no notice of the sale of which this deed was the supposed outcome. He was by the most meritorious title a purchaser for value. The execution under which the sale in 1870 was made, belonged to him. Any bid made by him, less than the face of the execution, was paid as soon as the hammer of the auctioneer fell. The fact of his being a purchaser for value was indeed admitted by the pleadings; but his relations to the executions, the sheriff's deed and the statute, which requires all sales made by a sheriff to be for cash, render it indisputable that, at least, it presumably appears that he purchased and paid for the property in question, in September, 1870.

*2. ——: acknowledgment.*

It seems also that he had no notice of the sale made in April, 1865. Constructive notice is out of the question. There was nothing having capacity to impart such notice. As to actual notice, we see and hear of none, unless the possession of the home place by the defendant was sufficient to apprise plaintiff as early as 1870 of this sale in April, 1865. But if we should consider the plaintiff bound to know that defendant claimed under the deed of the 31st of October, 1867, an inspection of that document would give him no intimation of the sale made in April, 1865. Reference is in that instru-

*3. POSSESSION, AS NOTICE OF CLAIM.*

ment made to the sheriff's sale to Tillman ; but nothing is said of a sale by the sheriff to the Farmers' Bank and John W. Reid. Possession may in some cases be evidence of a claim; but when a particular claim is notorious and sufficient to account for a possession, no one is called on to speculate as to the existence of some other claim.

We are, therefore, of opinion that the deed made in April, 1865, (assuming it to be settled that such a deed was then made,) could not be perfected by acknowledgment in 1878 so as to cut out the plaintiff.

He certainly occupies a more advantageous position than was held by Merry in the case of *Alexander and Betts v. Merry*, 9 Mo. 514. That case was decided in 1845. It has recently been quoted with approval, and must be regarded as settled law. *Strain v. Murphy*, 49 Mo. 337. Although in every conveyance by which Merry claimed, the fact of a sale, the defective certificate of which alone gave him any standing, was recited, he was held unaffected by such recital. This decision might be much narrowed without weakening the case of the plaintiff in this suit. It is too familiar to need the citation of authority in its support, that the doctrine of relation is never applied to the injury of an innocent, still less of a meritorious stranger.

It was strenuously argued that the court should read the certificate of the acknowledgment made in 1865 as if
4. SHERIFF'S DEED : the name of Gittings occupied the place of
variance between
deed and certifi- Long. It was urged that the maxim, *"prae-*
cate of acknowl-
edgment.        *sentia . corporis tollit errorem nominis,"* required
this reading of the certificate. This can only mean that if the court be satisfied that the acknowledgment was really made by Darius Gittings ; that he, and not Francis R. Long, was bodily present in court when the acknowledgment was taken ; then the clerical blunder of miscalling his name is of no consequence, or is cured by the proof before us of his bodily presence. But we fail entirely to perceive any evidence that Gittings, and not Long, acknowledged the deed on the 26th of April, 1865. All that we know on

the subject comes from the certificate of the clerk. Whether we should be at liberty to listen to any other evidence we need not stop to inquire; for absolutely none was offered. Under these circumstances it would be a startling thing if a court could strike from a legal document an essential and controlling word, completely changing its import. We have no reason whatever for the inference that the clerk made any mistake at all. If we suspected such a thing, we might be embarrassed by the difficulty presented by a misprision which affected an important interest, but which there might be serious difficulty in correcting. But as already said, all that we see, all that we hear, (and we may add, all that we fail to hear,) leads us to believe, not only as judges but as individuals, that the matter certified by the clerk is true so far as he declares that Francis R. Long acknowledged the deed we are considering; that it was Long, and not Gittings, who came into court, producing the paper which he certified; and though it is clear that a blunder was committed by some one, we are wholly unable to. construe this certificate as signifying that the acknowledgment was made by a person whom it does not once mention. It is because we can see no reason for thinking that Gittings was bodily present to the clerk, that we cannot obtain any foundation for attempting to cure the supposed error of misnaming him.

There are cases in which a trivial discrepancy in the name of the person executing, and the person acknowledging a deed, has been reconciled by proof of the identity of the two. If a grantor's name be correctly recited in the body of the deed, and he signs it in his true name but acknowledges it by a wrong name; or when an erroneous name is signed but the right one used in the acknowledgment; the error is cured. Such was the case of *Middleton v. Findla*, 25 Cal. 80. There, however, the mistake was very trivial. The deed was executed by *Edward* Jones. It appears to be acknowledged by *Edmond* Jones. There was no question but that Edmond and Edward were the same

person. Obviously such cases are no guide to us out of the present difficulty.

It is certainly true that a person may become bound by any mark or designation he may think proper to adopt. *Butchers & Drovers' Bank v. Brown*, 6 Hill 443. But we have no sort of evidence that any one intended, in the certificate before us, to use one name for another.

We need not pause upon the defense resting on lapse of time. In 1878 defendant set up that she had held ad-
5. LIMITATIONS. versely for ten years and more. But she does not say that she had been in adverse possession for ten years when this suit was commenced; and the fact was otherwise. A plea of limitations should always refer to the commencement of proceedings supposed to be barred by lapse of time. If the statutory period then lacks a single day, there is nothing gained by the protraction of litigation for many years beyond the time within which suit should have been commenced.

As to the dower agreement, it became irrelevant when it was shown that plaintiff was not a party to it. Doniphan and Calhoun and any number of the creditors of James T. V. Thompson, on the one hand, and Emily W. Thompson, on the other, had no power to conclude the rights of any other creditors.

No question appears to arise on this agreement. The home place was not sold under the decree of foreclosure. If indeed the Farmers' Bank of Missouri and John W. Reid were the owners of the home place, their vendee would hold it against the world, but not by reason of the dower agreement.

Our opinion, therefore, is, that the plaintiff is entitled to the relief he asks, and we reverse the judgment and remand the cause, with instructions to the circuit court to make a decree in conformity with the views here expressed.

Judge NORTON did not sit, having been of counsel;

HOUGH and HENRY, JJ., concur; SHERWOOD, C. J., and RAY, J., dissent.

SHERWOOD, C. J., DISSENTING.—I cannot subscribe to the foregoing opinion. I regard it as being utterly at variance with many decisions both of this and other courts bearing directly on the questions at issue; besides, as being the result of an entire misconception of the facts spread at large upon this record, and the necessary and legitimate inferences arising from such facts. I will briefly give the reasons why I think so:

## I.

And first,. as to the validity of the sheriff's deed to the Farmers' Bank and Jno. W. Reid; so far as the deed *itself* is concerned, no objection can be taken to it. The point, and the sole point of objection urged in the circuit court, was that the certificate of acknowledgment does not support and is not in conformity with the deed, because of the fact that the deed was made and signed by *Darius Gittings* as sheriff, but acknowledged by *Francis R. Long*, as sheriff. Let this objection be examined, and see what force it possesses.

The deed begins: "To all to whom these presents shall come, I, *Darius Gittings*, sheriff of the county of Clay, State of Missouri, send greeting." The deed then, after reciting the judgment rendered, the issuance of execution and its direction to the sheriff of Clay county, and its delivery to "Francis R. Long, then sheriff of said county,' states that said execution " was by said Long transferred and handed over to me, *as his successor in the said sheriffalty, upon the expiration of his term of office."* The deed then recites that a levy of the execution had been made by Long on the property in controversy, among other, and that after such levy, Long had turned over the execution to Gittings as his successor. The deed also recites that " *I, Darius Gittings*, sheriff as aforesaid, gave notice of the time

and place of sale," and then proceeds in the usual manner to the close in the name of "*Darius Gittings*, sheriff as aforesaid," and is signed and sealed by him. On this deed is indorsed the certificate of acknowledgment already mentioned, which bears the same date as the deed.

Now, nothing is better established law than that *a court is bound to take judicial notice of its own officers;* they will judicially notice their signatures, whether any official designation is added to their signatures or not, and will know also, when their terms expire. Bliss Code Plead., § 199, and cases cited. Taking this legal presumption as a premise, it must be apparent that *Darius Gittings, who signed and sealed the deed, acknowledged it*; for otherwise in the very teeth of that legal presumption, of that legal knowledge, we must *originate* a presumption or inference *of fact* that the circuit court of Clay county *did not know* that Long's term had expired or that Gittings' term had begun, did not know whether Long was *its* own *officer* when he came to acknowledge a deed signed and sealed by *Gittings*; in short, did not know whether Long was Gittings or the latter was Long. If, as *the books state*, the court *knew its own* sheriff, *knew his signature*, is it not a matter of wonder, if plaintiff's position be correct, that the court did not *promptly rebuke* Long when he came before the court to acknowledge a deed signed by Gittings, in which *Long* is referred to as the *former* and *Gittings* as the *present* sheriff? This question answers itself, and shows the supreme necessity of using, in investigations of this character, not only some knowledge of the law of evidence, but also common sense; and until you can overthrow the legal presumption that the court knew its own sheriff, you are bound to conclude that the insertion of Long's name in the certificate instead of that of Gittings was a mere misprision of the clerk; a mere error in the *name*, and not in the *man;* and so the misnomer should work no hurt.

The maxim, "*praesentia corporis tollit errorem nominis*"

applies here, and was applied in England recently in an important criminal case, where a juror was addressed by, and answered to the *wrong name* and was afterwards sworn, and upon a case reserved the court said: " The mistake is not a mistake of the man, but only of his name     *
*     At the bottom the objection is but this, that the *offi-cer of the court*, the juryman being present, called and addressed him by a wrong name. Now, it is an old and rational maxim of law, that where the party to a transaction, or the subject of a transaction, are either of them actually and corporeally present, the calling of either by a wrong name is immaterial. *Praesentia corporis tollit errorem nominis.*" *Reg. v. Mellor*, 27 L. J., Mag. Cas. 121.

Take another view of the certificate of acknowledgment: The body of the deed may be referred to, to support the certificate. Martindale Conveyances, § 259. In *Samuels v. Shelton*, 48 Mo. 444, the certificate of the clerk indorsed on the deed was the following: "Andrew Beaty, sheriff of said county, appeared in open court and acknowledged that he executed and delivered a deed to David Mulanix, as his voluntary act and deed, for the uses and purposes therein expressed." And Wagner, J., after stating that "the deed itself must contain the necessary certificate; and a *defective* certificate of acknowledgment cannot be sustained or helped by a resort to *extraneous* testimony," proceeds to say: " The only objection that can be plausibly urged against this certificate is that it does not specifically refer to the conveyance, but uses the phrase '*a deed.*' This is without doubt a mere clerical error. *The deed* sets out the execution, the transcript and sale, and the purchase by Mulanix; and the certificate of acknowledgment is placed on this deed by the clerk. It obviously refers to this deed and no other, and the mere inadvertence or clerical error of the officer making the indorsement ought not to be permitted to invalidate it.   *.   *   The intention is sufficiently clear on the face of the paper." That case undoubtedly shows two things: 1st, That the *deed* is

not regarded in cases of this sort as *extrinsic evidence*; and 2nd, That it may be legitimately resorted to, to cure and correct any mere clerical error and inadvertence in the certificate, which, but for such resort and reference, would be left uncertain and ambiguous. That case is approvingly cited in *McClure v. McClurg*, 53 Mo. 173.

So also in *Carpenter v. Dexter*, 8 Wall. 515, it was held that in aid of the certificate of acknowledgment, reference may be had to the deed or any part thereof. So also in *Chandler v. Spear*, 22 Vt. 388, where the grantor's name was Richard G. Bailey, but the certificate of acknowledgment showed an acknowledgment in the name of "Richard G.," and it was ruled that as it appeared from an *inspection of the whole instrument* with reasonable certainty that it was acknowledged by Richard G. Bailey, the grantor, that this was sufficient. Similar rulings were made in *Bradford v. Dawson*, 2 Ala. 203, and *Sharpe v. Orme*, 61 Ala. 263. The court there say that "the only general rule with respect to the construction of these certificates, when the object is to support the registration, is that where the statute has been substantially complied with, the rights of the parties shall not depend on strict criticism, but that any portion of the deed may be examined to give effect and meaning to a certificate which is apparently defective." And the court further says: "The *material fact* is, that the *grantors* acknowledged the execution of the conveyance, and whenever this can be fairly and reasonably *spelled out* from the certificate, the requisitions of the law are satisfied. When this certificate is read *in connection with the deed, the fact appears with certainty*." To the same effect is *Wells v. Atkinson*, 24 Minn. 161, where the court say in reference to certificates of acknowledgment: "It is the policy of the law to uphold them, whenever substance is found, and not suffer them to be defeated by technical or unsubstantial objections. In construing them resort may be had to the deed or instrument to which they are appended." Authorities announcing the same rule could be

greatly multiplied. *I have found none to the contrary.* So that it seems, if the authorities are to be followed, it is not such a very "startling thing" after all, for a court to read a certificate in connection with the deed, construe them together, and doing this, reject any repugnant word, which upon inspection of both deed and certificate would obstruct and defeat the obvious intention of the parties.

The Supreme Court of the United States, when speaking of such certificates, say : "Instruments like this should be construed, if it can be reasonably done, *ut res magis valeat quam pereat.* It should be the aim of courts in cases like this to *preserve* and not to *destroy.* Sir Matthew Hale said they should be astute to find means to make acts effectual, according to the honest intent of the parties. *Roe v. Tranmar,* Willes 682." *Kelly v. Calhoun,* 95 U. S. 710.

Applying to the case at bar the rule announced in *Samuels' case, supra,* and in the other cases cited, I read the certificate of acknowledgment. *Apparently* it was acknowledged by Francis R. Long, as sheriff of Clay county, but resorting, as I lawfully may, to the deed upon which that certificate is indorsed I find that Long, having previously levied the execution on the property in controversy, had gone out of office and turned over the *fi. fa.* to Gittings as his successor, that the latter had made the advertisement and the sale and signed and sealed the deed as the sheriff of Clay county. From this state of facts patent upon the face of the deed, to what other rational conclusion can I come but that *Gittings,* and not *Long,* sheriff of Clay county, was the actual grantor who acknowledged the deed? Whenever you are permitted to resort to the deed in aid of the certificate, all ambiguity vanishes and repugnancy ceases. This is so and you cannot deny it.

Take another view of the certificate and deed : Both bear the same date, April 26th, 1865; both have the same design ; their mutual dependence and connection appear on comparing or reading them together, and, therefore, in the eye of the law they may be regarded as *one instrument,*

although they do not refer to each other in terms. *Whittlesey v. Delaney*, 73 N. Y. 571, and cases cited; 2 Smith's Leading Cases, 259, and cases cited; *Noell v. Gaines*, 68 Mo. 649; *Waples v. Jones*, 62 Mo. 440; *Brownlee v. Arnold*, 60 Mo. 79. Following the authorities just cited and treating the deed and certificate as *one instrument* we may *reject* from the certificate the name of *Long* as the acknowledger, as being repugnant to the evident meaning and intent of the instrument; for still, after such rejection, enough will be left to constitute a good and valid sheriff's deed, properly acknowledged by the sheriff of Clay county—thus applying another maxim: "*Falsa demonstratio non nocet,*" (2 Smith Leading Cases, 468, 472, and cases cited;) and this maxim applies as well to persons as to things; the description of the person who acknowledged the deed, being true in part, to-wit: that he was the sheriff of Clay county, but not true in every particular, to-wit: that his name was *Long*. 1 Greenleaf Ev., § 301.

The sole ground of objection, as before stated, made by plaintiff to the deed and the certificate of April, 1865, when first offered, was that heretofore mentioned, and no objection was then made that it was a *copy*. So that the case then stood as if the deed had been the original one. If *either* of the above positions I have taken be correct, the deed was properly admitted to record, and if so, imparted constructive notice to all subsequent purchasers. Besides, plaintiff admitted both in his answer and on the trial that the copy offered was a certified copy, and according to the statute, (§ 2302,) was evidence, since the original was proven to have been lost. Why then speak of this copy as an "assumed copy?"

II.

But granting that the deed was improperly admitted to record, and, therefore, imparted no constructive notice, still the only party who could take advantage thereof, would be what the books call an "innocent purchaser."

And if plaintiff did not occupy this position then the re-acknowledgment of the sheriff's deed by Gittings, in 1878, vested the title in the bank and Reid by relation.

Much intellectual ammunition has, as I think, been wasted in the majority opinion about the deed being only a *copy*. The original being lost, a copy thereof containing the proper recitals, was to all intents and purposes a *new deed*, and the sheriff, by acknowledging the deed, and recognizing as his signature the name signed to the copy made that signature his own. This point certainly will not be disputed.

### III.

The next thing for consideration is, whether plaintiff was an innocent purchaser. I will consider this matter from two points of view. 1st, As a question of pleading; 2nd, As a question of evidence.

And first, as to the question of pleading: In *Halsa v. Halsa*, 8 Mo. 303, Hart, a defendant, had pleaded in his answer that he was an "*innocent purchaser, without notice of any conflicting claims.*" Scott, J., in speaking of the insufficiency of this answer, approvingly cites *Frost v. Beckham*, 1 Johns. Chy. 288, where Chancellor Kent says: "If a purchaser wishes to rest his claim on the fact of being an innocent *bona fide* purchaser, he must deny notice though it be not charged; he must deny, fully and in the most precise terms, every circumstance from which notice could be inferred." And the party who in apt terms pleads that he is such a purchaser must *prove* it; the *onus* is on him. *Jewett v. Palmer*, 7 John. Ch. 65. In Story's Equity Pleading, section 805, it is stated that a party cannot set up a *bona fide* purchase for value *at the hearing*, unless pleaded formally, or set up by way of answer as any other defense, and in denying notice as the foundation of a superior equity, the plea or answer must not only negative such notice in *general* terms, but in specific terms as to all circumstances upon which it is claimed in the bill; and the plea must deny notice of plaintiff's title and claim

previous to the execution of the deed and payment of consideration, and must deny notice of *plaintiff's title* and not merely the *existence of a person* who could claim under it. Plaintiff's reply to Mrs. Thompson's answer falls far short of the standard. He simply says that "he never had any notice or information whatever at or before the date of his said purchase of said real estate at sheriff's sale, in the year 1870, of any *claim of title* to the land in dispute by the Farmers' Bank of Missouri and John W. Reid or Emily W. Thompson." But he does not deny notice of the Clay county judgment, execution thereon, levy, sale, return, sheriff's deed to the bank and Reid, and the acknowledgment and recording thereof. Knowledge of these he virtually admits, contenting himself with averring their nullity. He does not aver payment of purchase money, nor that his bids were credited on the judgment, nor when he received his deed, nor deny notice at these periods. Even upon the *pleadings* then, according to the authorities cited, he is not an innocent purchaser, and consequently has no right to prove what he has not pleaded. The question is *dehors* the case.

2nd. Conceding, however, plaintiff's reply to be unexceptionable, his evidence would not support it. The *onus* being as before stated, he has fallen as far short in his evidence in this regard as he did in his pleading. Granting that plaintiff himself was without notice of Mrs. Thompson's rights, a debatable question, as will be presently seen, I cannot help regarding Jas. E. Lincoln as the attorney of his brother, when the sale under the foreclosure occurred. The plaintiff does not deny that his brother was his attorney, and on his shoulders rests the burden of proving lack of notice. He did not deny that he knew his brother was prosecuting his claim; and if he did not disaffirm the acts of his attorney, he ratified them, and that ratification related to the time of the act done. And Jas. E. Lincoln does not make it appear that he was *not* his brother's attorney. He says: "I can't say I was a

*regular* attorney for plaintiff till I brought the ejectment suits in 1871." Yet he states: " I looked out for a chance to make my brother's debt, all I could. He never instructed me to do so, but I supposed as a matter of course he wanted to make his money." Yet he admits he brought a suit in 1867 to revive the judgment lien under which plaintiff bought; that he instituted garnishment proceedings, and had executions issued in behalf of his brother. Was all this done without authority either *express* or *implied?* There is nothing in this record which induces me to doubt that his brother either directly or else indirectly sanctioned every step taken by his " irregular " attorney. If no such sanctioning occurred, it was a very easy matter for plaintiff to have interposed a denial when on the witness stand, and he was bound to do this if he desired to maintain the position of being an innocent purchaser. I am persuaded, therefore, that Jas. E. Lincoln must be regarded as plaintiff's attorney, and if he occupied this relation, then notice to him was notice to plaintiff.

And there is abundant evidence in this record showing notice to Jas. E. Lincoln. He was present at the foreclosure sale; he heard the announcement made by the sheriff, by Gen. Doniphan, and by Judge Norton, of the agreement entered into between the mortgage creditors and Mrs. Thompson for her relinquishment of dower. Whether he knew of " *any written dower agreement, or what that agreement was,*" does not signify. He heard the announcement made in the most solemn manner at the sale. He purchased at the sale, took a deed and received in that the relinquishment of Mrs. Thompson's dower. After all this it is futile for him to say, he was unapprised of Mrs. Thompson's rights. He either had knowledge or notice of those rights, or else abundant provocation and reason to institute inquiry respecting such rights, and this is sufficient. Surrounded by such circumstances he was grossly negligent if he failed to use the clue thus furnished him; and *gross negligence* is tantamount to *knowledge*. *Leavitt v.*

*LaForce*, 71 Mo. 353, and cases cited. The majority opinion takes no note of the fact of James E. Lincoln being plaintiff's attorney, nor of his testimony in that regard, nor of notice communicated to him in manner as aforesaid.

## IV.

The foregoing are only a few of the reasons which might be urged to sustain the action of the court below. A more righteous judgment, one more sound on its basis of facts, and more sound on its basis of law, in my humble opinion, was never rendered in any court of justice.

The case of Mrs. Thompson is one of peculiar hardship, and speaks, (or rather *should speak*,) to the ear of a court of equity with a most persuasive tongue. "In order (as she says in her answer) that she might save a home for herself and children and receive something to support them on," she is induced to sign the dower agreement, whereby property which would not have brought more than $50,000, at the utmost, yielded $73,000. But for this agreement the foreclosure sale would have swallowed up the whole property, and we should not have heard of plaintiff's " *most meritorious title.*"

If these facts do not give Mrs. Thompson a superior equity to plaintiff's, then the sooner we erase that meaningless word of six letters from our vocabularies the better. What! Shall a court of equity, which favors dower; which clings to substance and discards form; which shelters under its protecting shield its wards, the widow and the orphan; which does battle for the weak against the mighty—shall such a court, I say, seize with apparent avidity on the "shadow of a shade" of an empty technicality, discountenanced and held for naught by all courts of law, and thus deprive a poor widow of her *home*, and her *dower's worth?* I regret to say that in this instance the above interrogatory is answered in the *affirmative.*

Over in Illinois, however, where, in an equitable proceeding for *dower*, it appeared that the sheriff's deed, reg-

ular in other respects, granted to the husband "all of the right, title and interest which he and the other *plaintiffs* in the execution had in the lot" sold, the court said : "This is but a *clerical error which will not be regarded by a court of equity or any court while acting upon and adjusting equitable rights.* Stow could at any time have had the mistake corrected by procuring a conveyance from the proper officer. This mistake in nowise changes the rights of the parties to this proceeding." *Stow v. Steel,* 45 Ill. 328.   The "strong meat" of this equitable doctrine, would doubtless be repudiated here.

Moreover, Mrs. Thompson clearly has a dower right in the premises in controversy, if the dower agreement as to those premises is to go for nothing, as this court declares.   But this right seems not to have arrested attention in the majority opinion; but an iron-bound decree is to be entered by the circuit court, and no account is to be taken of that dower right, so far as appears in the mandate of this court.

I leave off, by saying, that after a careful consideration of this whole case, I am for affirming the judgment of the circuit court.   RAY, J., concurs with me.