## ROBERT B. BARTLETT v. GLASCOCK & OTHERS.

| 4 | 62 |
|---|---|
| 161 | 33 |

1. B. had a deed for certain lands, not recorded—D. heard B. say he had title to the lands—Held, that D. who afterwards purchased the lands from another, had sufficient notice of B's title to put him on further inquiry—and if he purchased without further inquiry, he purchased with notice of B's title.
2. No decree can be made against the answer, unless it be contradicted by two witnesses—or one witness and strong corroborating circumstances.
3. Actual possession of land by self or tenant, is notice to all of title.
4. If a purchaser with notice of title in another, sells to one having no notice, the latter is protected in his purchase.
5. D. purchases land at public sale—and by a subsequent arrangement the deed is made to G.—Held, that D. is not the agent of G. in regard to the purchase, and that G. is not affected by any notice D. may have had of title in another. It is a case of substitution and not of agency.
6. Administrators sell land to G. under an order of court, to pay debts —they give him a title bond to convey on payment of purchase money.—Before payment, G. sold and conveyed the land to B., B. went into possession. The land was afterwards sold under execution against G. for the purchase money—and the purchaser at the sheriff's sale paid the purchase money. Held, that G. had no title subject to sale on execution—that the purchase money being paid, there was no lien on the land therefor—that the purchaser at the sheriff's sale got no title and lost his money—and that B. was entitled to the land in law and equity.

APPEAL from the circuit court of Marion county.

McGIRK Judge,* delivered the opinion of the court.

Bartlett exhibited his bill of complaint in the circuit court sittting in chancery.

The substance of the bill is, that in the year 1828, McRea and Rush, two of the defendants, being administrators of the effects of one David Rush, acting under the authority of the county court of Marion county, sold at

* Wash absent.

APRIL TERM
1835.

Bartlett
v.
Glasscock & others.

public sale to pay debts, eighty acres of land on which a mill was erected, that the same was sold on a credit, and that one Glendy, one of the defendants, became the purchaser, and gave his bond and O. Dickerson, also one of the defendants, security for the payment of the purchase money—the purchase money was $801—that the administrators executed to Glendy, their bond to make him a title on the payment of the money. That Glendy in the same year, entered four eighty acre tracts of land around and adjoining the mill tract in his own name, but with Bartlett's money and for Bartlett's use. That Bartlett then and afterwards advanced to Glendy large sums of money and paid debts for him amounting to three thousand dollars—and that upon this consideration, Glendy on the 11th of November 1828, and after the entry of said land, and after the purchase of the mill tract, executed to Bartlett a deed in fee for the five peices of the land above mentioned, including the mill. That on the 30th day of May 1829, he assigned to Bartlett the title bond for the mill tract he had on the administrators. That the deed was executed in all the forms of law, that before the same was recorded the same was totally destroyed by accident. That on the 23rd of December 1828, Glendy, by a deed duly executed, transferred the four eighty acre tracts by him purchased of the U. S. to Dickerson.

That Dickerson took this deed with a full knowledge of the existence of the prior deed to Bartlett for the same land. The bill further states that the administrators with a full knowledge of Glendy's conveyance to Bartlett, presented their suit against Glendy and Dickerson on their bond and obtained judgment against them after Glendy's conveyance to Bartlett, and after the deed to Dickerson of the four eighty acre tracts before mentioned. That on the 23rd October 1829, the sheriff of Marion county by virtue of an execution issued on this judgment sold the whole of the 5 tracts of land including the mill, and that Dickerson became the purchaser of the mill tract, and that other persons became the purchasers of the other tracts. That Dickerson and Glasscock made an arrangement, for Glasscock to pay the amount of the judgment to the administrators, and Dickerson gave up his purchase to Glasscock. The purchasers of three of the other tracts also gave up their purchases to Glasscock. That he paid part of the money to the administrators and secured them as to the balance, and the sheriff then made a deed to Glasscock as purchaser of the mill tract, and also made a deed to him of the other three tracts in like manner,

The bill further charges that Dickerson, the administrators, Glendy and Glasscock had full knowledge of the existence of his deed for all said land—and that he was a fair and honest purchaser for a full and valuable consideration, and that they and each of them had full knowledge that Glendy entered the four ½ quarters in his name with Bartlett's money and for Bartlett's use. The bill prays for a decree annulling the deed of Glasscock and the deed to Dickerson, for possession of the lands and for an account of the rents and profits for general relief. The answers admit the sale of the mill tract by the administrators to Glendy as stated in the bill—the administrators, admit the payment of the money to them, by Glasscock, and the satisfaction of the judgment against Glendy and Dickerson, deny notice of Bartlett's title. Glasscock and Dickerson admit the sheriff's sale as stated in the bill, admit the deed to Dickerson of the four ½ quarters, deny all knowledge of Bartlett's title, deny combination and fraud &c. As to Glendy the bill is taken to be confessed.

The complainant filed his replication and on this state of pleading the cause was set for hearing.

On the hearing Bartlett proved beyond dispute, the due execution of a deed to him by Glendy for the lands in question of the date in the bill mentioned, he proved the destruction by his own oath, and by the oath of a witness he proved the contents of the deed. He also proved by the testimony of some witnesses that Glasscock and Dickerson had notice of his title. He also gave some evidence of the consideration paid by him to Glendy for the land, which will be attended to when we come to consider the case on this point. He also proved clearly that the four half quarters entered by Glendy in his name were paid for with his money. The circuit court after hearing the evidence dismissed the bill of complaint generally, the cause is brought here by appeal. The appellant makes several points, the most prominent of which only will be noticed.

The first point made by the appellant is, that equity will set up a last deed. The second is, that the sale to Glasscock is void because the land on which the execution was levied was not subject to execution.

The appellee insists that in this case Bartlett has not made out by evidence that his deed was lost, insists the sale by the sheriff is good and valid, and that, as to the land on which the mill is, there existed at the time the sheriff sold the land a lien which Bartlett must satisfy before he can hold the land.

APRIL TERM
1835.

Bartlett
v.
Glasscock & others.

9

APRIL TERM
1835.

Bartlett
v.
Glasscock & oth-
ers.

For the sake of convenience, we will consider this case in two main points of view.

1st. Has Bartlett any title in law and equity which a court of chancery can set up for him? If he has no such title then it will not be material to investigate the title of the defendants. Secondly. If Bartlett has such title, then has Glasscock who is mainly interested in this case any better and stronger title either in law or equity to oppose to Bartlett's right?.

We will first consider the fact of Bartlett's lost deed. Chapman, a witness in the case swears that about first of January 1829, Bartlett shewed him a deed purporting to be executed by Glendy to Bartlett for all this land.. It was shewn to him for the purpose of obtaining his opinion whether it was good in law for that—and that his opinion was that it was good—and that the date corresponded with the time alleged in the bill, and the consideration expressed in the deed was $3000.

Mr. Hendricks a witness swears that he as justice of the peace took the acknowledgment of a deed from Glendy to Bartlett some time in or about the time spoken of by Chapman for all the land in question.

Mr. Fry swears that about the same time Bartlett brought to his house in Palmyra, a deed corresponding with the description given by the other witnesses which was for the same land—and asked him to have it recorded, which he promised to do—that the deed was then injured by some acid, and that he laid it away in his desk. —That in a few days thereafter he looked at the deed again, and that it was then illegible so that he did not offer it for record. This testimony satisfies us that the deed set up by the complainant's bill did exist in the beginning of the year 1829, and that it was by some accident destroyed. Bartlett then gave evidence to shew that he paid to Glendy a full and fair consideration for the land mentioned in the deed. The proof on this point is as follows:—Doct. Fry says that some time in the year 1828 or 1229, he knows that Bartlett paid Glendy on a settlement of their accounts $800 or $1000—heard him acknowledge at another time that Bartlett had paid him in full for the mill. That Bartlett retained possession of the mill from the time it was delivered to him, till the sale under execution. Means, a witness, says that before this time Bartlett deposited with him $2000 to be disbursed on his order. That on the 8th of February 1828, Bartlett by order directed him to enter the four half quarters of public land in question in the name of Glendy, and

to pay for the same with his money, which was accordingly done—says that he frequently let Glendy have money on the orders of Doct. Bartlett; the witness does not state how much money in all Glendy obtained from him on Bartlett's account. Another witness says Bartlett paid workmen wages, frequently, who were at work on the mill in Glendy's possession—how much he does not state.

APRIL TERM
1835.

Bartlett
v.
Glasscock & others.

This is all the testimony on the record with regard to the consideration of the deed. The defendants gave in evidence a former bill of complaint exhibited by Bartlett against Glendy and others after the date of Glendy's deed to Bartlett, in which bill Bartlett claims that Glendy yet owes him $3000 for money advanced or loaned. Upon this state of testimony the question is made whether Bartlett has proved a sufficient consideration to support his deed? We are clearly of opinion that as to the four ½ quarters entered in Glendy's name, that Bartlett's money paid for the same, and that this fact is a sufficient consideration to support the deed for these four half quarters. The next question arising out of this point, is whether Dickerson had notice of Bartlett's right. Dickerson's answer admits that he had heard Bartlett say he had furnished Glendy with money for the purchase and improvement of said lands. But how much he does not know. The answer then goes on and insists that the respondent Dickerson had no notice of Bartlett's title. By this we suppose the respondent means only, that he only had Bartlett's word for it. Dickerson, when Bartlett told him this, should have enquired further before he took his deed. Means clearly proves that Bartlett told the truth. Dickerson then purchased this land or rather took his deed from Glendy with a clear knowledge of Bartlett's equity. This knowledge on his part is sufficient to prevent him from having any benefit by reason of the deed from Glendy to him.

B. had a deed for certain lands, not recorded. D. heard B. say he had title to the lands. Held, that D. who afterwards purchased the lands from another, had sufficient notice of B's title to put him on further inquiry—and if he purchased without further inquiry, he purchased with notice of B's title.

The next enquiry is as to the fact whether Glasscock, who was the purchaser at the sheriff's sale of all the land entered except one 80 acre lot—the one purchased by Smith—had any notice of Bartlett's equity. Matson, a witness, swears that after the property was advertised for sale by the sheriff, a gentleman requested him to investigate the title to the property—that he had a conversation with Glasscock the defendant, on the subject, in which conversation Glasscock informed him that the title to the mill property was in Bartlett, that Glendy had conveyed the same to Bartlett. Whether according to this testi-

APRIL TERM
1835.

Bartlett
v.
Glasscock & oth-
ers.

mony Glasscock meant the title only of the 80 acres on which the mill stood was in Bartlett, or whether he intended to speak of the other four lots, cannot be collected from the evidence. But the language used by him on this occasion rather conveys to our mind the idea that he only intended to speak of the 80 acre lot embracing the mill.

This is the only direct testimony that Glasscock had any notice of Bartlett's equity to the mill lot, but there is no evidence that Glasscock had any notice of Bartlett's equity to the other three lots purchased by him.

No decree can be made against the answer, unless it be contradicted by two witnesses —or one witness and strong corroborating circumstances.

The rule to be applied in this case is, that no decree can be made against the answer except on the testimony of two witnesses contradicting the answer. This evidence does indeed contradict the answer as to the mill lot, but goes no farther. A qualification of this rule has been admitted in many instances. The qualification is, that one positive witness and strong corroborating circumstances will overturn the answer. In this case there are no circumstances; the evidence in aid of this witness is the testimony of Chapman. He says on the day of the sheriff's sale he had some conversation with Glasscock in reference to Bartlett's title to the property generally, but does not recollect even the substance of it. We cannot undertake to say what the value of that conversation was.

Actual possession of land by self or tenant, is notice to all of title.

In this case it is argued by U. Wright and Anderson for the complainant, that Bartlett being in possession of the land by himself or tenant, that fact is notice of title. It is admitted by Hunt for the defendants, that such is the law, but it is insisted that Bartlett had no possession by himself or tenant. It seems to have been so—these four quarters were wild lands unimproved, and no one was in fact, possessed of them.

But as to the mill and the lot belonging to it, the fact was otherwise. It is our opinion therefore, that Glasscock having purchased three of these lots without notice of Bartlett's equity is entitled to hold them. Though it is true that Dickerson bid off one of the lots, no doubt he had notice as to this of Bartlett's equity: In this case Dickerson is not to be viewed as the real purchaser, but Glasscock is the legal purchaser. If Dickerson had been the purchaser and sold to Glasscock, yet in that case the rule of equity is, that if a purchaser with notice of an equity sell to a person, for a full or fair consideration, who has no notice of the equity, such purchaser will be protected.

If a purchaser with notice of title in another, sells to one having no notice, the latter is protected in his purchase.

That rule applies in this case. But it is argued, that Dickerson is to be considered as Glasscock's agent, and if so, then Glasscock is bound by the notice to his agent.

We hardly think the law will consider Dickerson as the agent, here was a clear case of substitution and not a case of agency. As to Smith Conway and Slaughter, there is no evidence against them, nor is there any evidence as to these four lots, fixing liability on any of the defendants.

The bill, so far as relates to these four lots was rightly dismised as to all the defendants.

The next enquiry is, whether Glasscock has any title either legal or equitable that can stand in the way of Bartlett's title to the mill lot. The same objections were raised to his title to the mill lot, that were to his claim to the other four lots—with one other, which is that Glendy's right to this lot was not subject to execution. We are clearly of opinion that this objection is fatal to Glasscock's right. We are satisfied the evidence is sufficient to establish the belief, that Bartlett really paid money to Glendy for the mill tract. He at one time, paid him at least $800—and at other times advanced to him considerable sums, and also paid sums to workmen for him.

Whether these advances and payments to workmen constituted the consideration of the deed or not, or the $800 that Dr. Fry saw him pay, we cannot say. Suffice it to say, enough appears to constitute a good consideration. Then his title in equity is good. Glasscock has a sheriff's deed to oppose to Bartlett's title.

The first enquiry is, was Glendy's claim to the mill subject to be sold on execution? Second, could his right have been sold by the sheriff, if he had never parted with it to Bartlett? Let us see what his right was.

The law requires administrators to sell lands for the payment of debts in certain cases. But the land is only to be sold on condition, no title to be made till the money is paid. The administrators gave their obligation to Glendy to make him a title when the money should be paid and not before. This was the condition of the title when the execution was levied and when the sale was made. Glendy had no equity only so far as the mere contract gave it to him, that is, the contract gave him the right to pay the money—and when he should do that, his equity to have the land would be complete. Before he, or any one else paid any thing, he sold the land to Bartlett. This he might lawfully do. Such sale gave Bartlett a right to pay the money and have the land. When

APRIL TERM 1835.

Bartlett
v.
Glasscock & others.

D. purchases land at public sale—& by a subsequent arrangement the deed is made to G. Held, that D. is not the agent of G. in regard to the purchase, and that G. is not affected by any notice D. may have had of title in another. It is a case of substitution and not of agency.

Administrators sell land to G. under an order of court, to pay debts —they give him a title bond to convey on payment of purchase money. Before payment, G. sold and conveyed the land to B., B. went into possession. The land was afterwards sold under execution against G. for the purchase money—& the purchaser at the sheriff's sale paid the purchase money.—Held, that G. had no title subject to sale

APRIL TERM
1835.

Bartlett
v.
Glasscock & others.

on execution—
that the purchase
money being paid,
there was no lien
on the land there-
for.—That the
purchaser at the
sheriff's sale got
no title and lost
his money—and
that B. was enti-
tled to the land in
law and equity.

he made the sale to Bartlett, he had seizin in law and equity. That is, he was in fact, in possession of the land and had a right to perfect his equity by the payment of the money. Bartlett took possession of the land and was in possession when the sheriff sold the same. When the levy was made, Glendy had no seizin in law nor equity, nor was any one seized in law or equity for his use—at least Bartlett was not so seized. If any body was seized of the land in equity, it must have been the heirs or administrators, and whoever it was, such persons were seized in equity to the use of Bartlett by reason of his pur- chase for a valuable consideration.

Thus stood the title when the levy was made. Bart- lett had an equitable right to the land, and the adminis- trators had in this case a lien on the land for the pay- ment of the money. The act of the legislature respect- ing executions (Re. code, 365 sect. 8) says, that execu- tions may be levied on certain personal property. Then it says, executions may be levied on all and singular the lands, tenements & real estate, whereof the debtor or any person to his use, was seized in law or equity, on the day of rendition of the judgment whereon execution issued, or at any time afterwards, shall be liable to be seized &c. If Glendy had not sold to Bartlett, then the administra- tors after the payment of the money would have been seized to the use of Glendy. But before the payment, it is difficult to say there was any estate in him which could be sold—however we will reserve this question for future discussion, for it is not the case before the court.

A case has been cited from 17th J. R. 351, which we think in point. The statute of New York declares that execution shall be made of all such lands as any other person than the debtor, is seized of or possessed of to his use, or in trust for him, against whom execution is issued. It appears by the report to have been a case of this kind.

One Atkinson, by a written agreement, contracted to sell to one Birdsall, certain lands at a certain price, where- on he paid down $400, and Birdsall agreed to pay the balance by three annual instalments—a deed to be given on the payment of the second installment. Birdsall went immediately into possession and afterwards paid $172 and neglected to pay the residue. About two years af- terwards he contracted to sell the land to Smith, & Smith agreed to pay the balance and entered into possession of the land. A judgment was then obtained against Smith by one Harrison, and afterwards Smith agreed by writing, to sell part of the land to one Perry, and Perry agreed to pay Atkinson the balance.

Perry then purchased of Atkinson his contract and paid him the balance. Afterwards an execution was levied on the property as Smith's, and sold by the sheriff. The supreme court of New York decided that Smith's title or claim was not subject to execution under their statute. The New York statute and our statute are in substance the same, and the cases are alike.

In that case neither Atkinson, nor Perry, the last purchaser, was seized to the use of Smith or any one else, till his money was paid. Here no one was seized to the use of Glendy till the money was paid, at least. It has further been argued, that at all events, Glasscock is entitled to have his money back again, as his money went to satisfy an incumbrance, which Bartlett would have been bound to satisfy. When this point was first started, we thought there was weight in it, but now we think there is none.

In the first place, if Glasscock on the sheriff's sale, or without, had paid the debt to the administrators and they received it as such, the land would stand discharged forever. But it does not follow that the person who paid it would have any right to demand of Bartlett the money. The act on the part of Glasscock was voluntary and without request and perhaps against the will of Bartlett.

When a person buys at sheriff's sale the risk is all his own. If the title is bad the loss is all his own. If there is a speculation the gain is all his own, and though he should pay large sums of money, whereby the debts of the debtor would be extinguished, yet if the property bought was worth nothing, he could neither recover it from the sheriff, nor the debtor. If A. chooses to pay the debt of B. though the debt be entirely extinguished by such payment, yet A. has no claim on the debtor, unless the debtor requested him to do so. Thus it is, that Glasscock has no right to have his money back again. It is our opinion that the mill tract be decreed to Bartlett, as the administrators have received the money, and the lien, if they had any, is entirely extinguished, and the bill was rightly dismissed as to the balance of the lands.