WARREN, *Appellant*, v. RITCHIE *et al.*

128 311
f155 597

Division One, May 14, 1895.

1. **Appellate Practice:** EQUITY CASES. In cases of equitable character the supreme court reviews the facts.

2. **Deed:** RESCISSION: FRAUDULENT MISREPRESENTATION. Where it appears that a party, charging fraudulent misrepresentations in respect to the giving of a quitclaim deed to land, in fact acted upon his own judgment in so doing, and that the alleged misrepresentations formed no material inducement to his action, he can not rescind it.

3. **Fraud:** PROOF: PRESUMPTION. Fraud is not to be presumed, but is an affirmative fact to be proved. It may, however, be shown by circumstances or by acts.

*Appeal from Wright Circuit Court.*—HON. W. I. WALLACE, Judge.

AFFIRMED.

*F. M. Mansfield* and *J. P. Nixon* for appellant.

(1) The price paid for the land was grossly inadequate and calculated to shock the moral sense and throw a cloud of suspicion over the honesty of the entire transaction. *Nelson v. Betts*, 21 Mo. App. 231; Kerr on Fraud and Mistake. (2) The evidence is that Isabella Spence and the Spence heirs made King a quitclaim deed to the land, and such quitclaim deed is no protection to the prior unrecorded deeds of Spence and wife to Adams, and Adams and wife to Warren. This protection is only afforded to an innocent purchaser for value. "In order to entitle an innocent grantee to protection against a prior unrecorded conveyance, he must have parted with something of value for a consideration before receiving notice of the prior conveyance." *Conrad v. Fisher*, 37 Mo. 412; *Halse v. Halse*, 8 Mo. 303; *Fox v. Hall*, 74 Mo. 317; *Napa Wine Co. v. Rinehart*, 42 Mo. App. 183; *Bank v. Frame*, 112 Mo. 509. Actual notice to Mr. King of the title of Adams and Warren is sufficiently brought home to him by the light of surrounding facts and circumstances. *Ins. Co. v. Smith*, 117 Mo. 292. (3) When we compare the false representations with the actual truth as to the real condition, title, occupancy, condition of soil and value of the land, the extent of the fraudulent representations and imposition becomes glaringly manifest. It is not deemed necessary to furnish an array of authorities to show that the fraud, misrepresentation and undue influence and the absence of real consideration are grounds of relief in equity. *Daily v. Jessop*, 72 Mo. 140; *Griffith v. Towneley*, 69 Mo. 13; *Foust v. Boman*, 30 Mo. 414; *Durfee v. Moran*, 57 Mo. 374; *Railroad v. Brown*, 48 Mo. 294; *Dunn v. White*, 63 Mo. 184. Even if this was an action at law, it would come square-

ly within the principle of *Watson v. Crandle*, 7 Mo. App. 235. (4) This is not one of that class of cases in which the supreme court should defer to the chancellor. Here the evidence has but one drift and will bear but one reasonable interpretation; and the principles so clearly announced in the case of *Benne v. Schnecko*, 100 Mo. 258, are especially applicable to the case under consideration. (5) One party, the defendant, had resided near the land many years and knew its soil, title, condition and value; the other had no definite knowledge concerning it. Kerr on Fraud, p. 80; *Cotrell v. Krum*, 100 Mo. 404.

*Wm. O. Mead* and *Jesse Root* for respondents.

(1) The pretended bill of exceptions was not filed during the term at which the cause was tried, nor does it appear that leave was given appellant to file his bill in vacation. Only errors appearing on the face of the record proper will be reviewed on this appeal. *Rine v. Railroad*, 88 Mo. 392; *Railroad v. Carlisle*, 94 Mo. 166; *State v. Berry*, 103 Mo. 367; *State v. Hill*, 98 Mo. 571; *State v. Broderick*, 70 Mo. 622; Finkelnburg's Appellate Prac., sec. 2168 and note, p. 41. (2) The appellant relies alone upon the strength and probative force of his testimony, which wholly fails to sustain the allegations in his petition. *Jackson v. Wood*, 88 Mo. 76; *Johnson v. Quarles*, 46 Mo. 423. The proof must be so clear, definite and positive in a case of this nature, where it is sought to divest a title that has already vested by deed, as to leave no reasonable grounds for doubt or hesitation on the part of the chancellor as to whether the relief should be granted or not. *Forrester v. Scoville*, 51 Mo. 268; *Rogers v. Rogers*, 87 Mo. 257. (3) It is well settled that deeds will not be set aside where the party seeking relief acted upon the mere

opinion of another, whether interested or not. *Anderson v. McPike*, 86 Mo. 293. (4) A court of equity will not relieve against a misrepresentation or mistake of what the law is or is not. *Price v. Estell*, 87 Mo. 378; *Norton v. Highleyman*, 88 Mo. 621; *Clark v. Edgar*, 12 Mo. App. 345. (5) A party wishing to rescind a contract for fraud or mistake must offer to do so promptly and to place the other party *in statu quo*. *Estes v. Reynolds*, 75 Mo. 563; *Hart v. Handlin*, 43 Mo. 171. (6) This court, in cases of this kind, may review the testimony, yet we apprehend they will defer somewhat to the finding of the trial judge, who has the witnesses before him.

BARCLAY, J.—This is a suit in equity to set aside a quitclaim deed, made by plaintiff, Mr. Warren, to defendant, Mr. Ritchie. The deed is of date, August 20, 1890, and purports to convey plaintiff's interest in one hundred and twenty acres of land in Wright county.

The grounds of the suit are that the deed was obtained by representations regarding the condition and value of the land and of its title, which were false and fraudulent, and known to be so to the defendant, Mr. Ritchie; and that plaintiff, in ignorance of the truth, was thereby induced to part with his interest.

The alleged misrepresentations (as charged in the petition) were that the land "was rocky and not fit for cultivation; that it was not near any town and was not worth more than $1.25 per acre; that said land had been sold for taxes and that, under the laws of the state of Missouri, a tax deed conveyed a good title and that said Ritchie and others had been in possession of said land many years and had acquired title to same by limitation; that the legal heirs of one John E. Spence had

sold and conveyed all of said land to innocent pur-
chasers, and that   *   *   *   the plaintiff had no title
to said land.''

The petition charges that, by reason of the fraud
so practiced upon him, plaintiff was induced to part
with his interest in the land for the gross price of $50,
whereas the land was really worth $20 per acre.    The
prayer is that the deed be canceled, defendant's title
divested, and that the title be vested in plaintiff, etc.

The answer admits that plaintiff made the deed for
the consideration of $50; but denies all the other
charges.

Upon trial before Judge WALLACE, a decree was
rendered for defendant.    The plaintiff appealed, after
the usual steps for a review.

The case being one of equitable cognizance, we
have reviewed the facts, and have reached the conclu-
sion that the judgment of the trial judge should not be
disturbed.

It seems unnecessary to set forth at large the
details of the evidence.    The substance of the contro-
versy can be stated shortly.

According to plaintiff's account, he resided in Illi-
nois.

The Missouri land in controversy had been entered
at an early day in the name of John S. Spence, in
reality, however, for the use of his brother, E. L., who
furnished the purchase money.    E. L. Spence sold the
land to a Mr. Adams; and Mr. John S. Spence and
wife, in 1860, made a deed to Mr. Adams accordingly;
but the deed was not recorded until 1887.

Mr. Adams, having removed from Missouri to Illi-
nois, met plaintiff, and in February, 1864, sold the land
to him, making a deed to that effect; and delivering to
plaintiff the certificate of entry and the deed from
Spence.

Before any of these deeds showing plaintiff's title were recorded, the heirs of John S. Spence, in January, 1883, had conveyed the land by deed to William King. That deed was duly recorded in Wright county on the day of its date.    Mr. King afterward conveyed his interest in the land to Mr. Rippee, who is a partner of defendant, Ritchie; and these two are in possession.

In August, 1876, the collector of Wright county made a tax deed to Henry Smith for the land in suit, on account of proceedings based on the nonpayment of state and other taxes; and the son of this Smith testified, at the trial of this case, that he or his mother claimed the land under that deed, and that he had had some litigation about it, then pending for about three years.    The plaintiff in the present suit admitted at the trial that an action had been begun in February, 1890, by Mrs. Smith, upon this Smith title, to recover part of the land from Mr. Rippee who was then in possession; and that that action was still pending.

The foregoing facts are either admitted by all parties, or proved beyond any serious question by the evidence.

In 1890 the defendant opened negotiations with plaintiff, through attorneys at Mount Vernon, Illinois, looking to the acquisition of the plaintiff's interest in the land.

Plaintiff had already by letter consulted Missouri counsel, residing near the land in question, with a view to assert his supposed rights to the land.    He had also received a letter, in February, 1890, from J. C. Spence (brother of the original owner of the land) in which plaintiff had been informed that the land was "in bad shape," had been "sold for taxes and bought by Henry Smith;" that eighty acres of it then were "in the hands of a third party, and J. M. Spence" (son of J.

S. Spence) "set up a claim to the other eighty;" that the deed made to Adams was not recorded, and the land office record showed the entry of Spence, but no record of any transfer; and that his widow claimed it under the original entry.

A series of inquiries by letter by plaintiff of Missouri parties and attorneys, and efforts by plaintiff to start proceedings to recover the land, then ensued.

In July, 1890, defendant Ritchie employed a firm of attorneys at Mount Vernon, Illinois, to obtain a quitclaim deed of plaintiff. As they were not on friendly terms with the latter, they employed another attorney, who interviewed the plaintiff. The attorney's account of what he did was given in evidence by plaintiff, accompanied with a deliberate written statement on the subject, prepared after the present suit was brought.

According to this statement he had communicated to plaintiff, on behalf of the parties for whom he acted, the representations that plaintiff (Warren) had no interest whatever in the land; that there was a deed already of record conveying his interest in said land away; that in addition there was a tax deed outstanding against Warren, and that his deed was not required or asked for, except for the reason that it would make the abstract clear, and not for the reason that Warren had any interest in the land.

The attorney further declared that he fully believed these statements to be true and so advised Warren, and, on that belief, he advised Warren to sign the deed, which the latter did.

The attorney also told him that a deed obtained by fraudulent statements was not valid in law or chancery, and that if it turned out that he and Warren were deceived in the matter, he would aid plaintiff in getting the matter righted.

The evidence of these statements of the attorney appears to have come in without objection from any quarter.

The plaintiff had paid one visit to Missouri to see the property; but, falling sick on the way, had returned without accomplishing that object; but that was several years before 1890.

It appears also that plaintiff claims to have sent the deed (through which he traces his title) to the recorder of deeds in the county some twelve or fifteen years before he gave his evidence, which would make the time about 1877 or 1880; but the deeds were not recorded for many years afterward, as already indicated.

The plaintiff, after considerable hesitation, finally made the deed in 1890 which forms the subject of the suit.

We are unable to discover that he was defrauded in the transaction. His claim of title was subject to serious question when he made the quitclaim.

On the admitted facts the extent of his title was a doubtful question of law. He had been substantially told the same facts (which he claims were misrepresentations) by other parties than defendant.

We are satisfied, from a careful review of the evidence, that he acted on his own judgment as to the course he took. The representations that were actually proved were that there had been a deed made to an innocent or third party conveying away the Spence interest, which plaintiff claimed to own, and that said conveyance had priority to plaintiff's claim by virtue of earlier record; and that the land had also been sold for taxes. Those statements were true; or, at least, there is no proof that the parties who made them did not believe them true.

Moreover, there is nothing to show that plaintiff was not fully aware of the exact state of the title. He evidently took steps in 1890 to inform himself, independently of the representations made by defendant or his attorney.

During the negotiations between plaintiff and defendant's attorney (which culminated in the deed now challenged), Warren took sufficient time, before acting, to communicate with parties in Wright county, Missouri, in regard to the land and the condition of his claim to it there.

But we do not think it needful to go further into a review of the evidence.

Fraud is not to be presumed, but is an affirmative fact to be proved by anyone alleging it, though it may sometimes be shown by circumstances, or by acts which are often more expressive than words.

In the present case the evidence falls short of proving that the outstanding claims to the land, through the deeds to Smith and King, were invalid; and still less does it tend to show that defendant did not believe those claims valid, or that anything said by defendant or by his attorney was a material inducement to plaintiff's act in giving the quitclaim.

Plaintiff's own evidence does not establish that he had a sound title to the land; or, at least, the record here does not, by any means, show that his title was perfect as against the pretensions of the adverse claimants.

We consider that the decree of the trial judge can be readily supported on the ground that there is no preponderance of evidence, as the law requires, to sustain plaintiff's charges of fraud and misrepresentation. Accordingly, the judgment is affirmed. BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.