## M. J. JONES v. MARGARET NICHOLS et al., Appellants.

### Division One, December 20, 1919.

1. **FRAUD: Proof: Presumption.** The burden is upon the party alleg-
ing fraud to prove it by clear and convincing evidence. While
fraud may be inferred from facts and circumstances, it will not
be presumed without or against evidence; and where the trans-
action may as well consist with honesty and fair dealing as with
a fraudulent purpose, it is to be referred to the better motive.

2. ————: **Conspiracy: Delay in Probating Will: Intermediate Convey-
ances.** Where the owner, the father of three married daughters,
devised land to his wife, and she delayed for twelve years in hav-
ing the will probated, and was told by the justice of the peace and a
lawyer that it was not necessary that it be probated, and in the
meantime two of the daughters and their husbands, long after the
will was made, conveyed a two-thirds interest in the land to secure
a loan made to them by plaintiff, who examined the records of the
probate court before making the loan, a conspiracy between said
vendors and the widow to defraud plaintiff and the public is not

established by mere proof that the vendors knew of the existence of the will, there being none that the widow delayed its probating for any such purpose, or was in any wise a party to the alleged conspiracy.

3. **LIMITATIONS: Land Subject to Dower and Homestead: Married Women.** The claim of title by defendants in this case by adverse possession must be denied, if the property was the homestead of their father and dower has not been assigned to his still surviving widow, and all of the children were married women when their father died, and the husband of no one of them had been dead ten years at the time of the trial.

4. **TITLE OF DEVISEE: Unprobated Will: Intervening Conveyance.** Title does not pass by will until the will is probated, but when probated it relates back and takes effect as of the date of testator's death, and all intervening conveyances to purchasers who had notice, actual or constructive, are eliminated. The statute fixes no time within which a will must be probated, and the law does not make void an unprobated will.

5. ————: ————: ————: **Possession as Notice: Homestead: Innocent Purchaser.** Where the will gave the property to testator's widow and was not probated for twelve years after his death, a purchaser who, eight years after testator's death, took a conveyance from her two married daughters, residing elsewhere, with actual knowledge that she was in the open and exclusive possession, was bound to inquire of her the ground, source and right of her possession, and, having made no such inquiry, took with notice of the will. The fact that she was testator's widow and the property was a homestead did not vest the purchaser with the right to attribute her possession to her marital rights and relieve him of the duty to inquire of other rights she might have; and since her rights as widow and devisee were cast upon her at the same instant by the death of her husband, it cannot be said that she went into possession under one right and afterwards acquired another. The rule of law is that open, exclusive, separate and distinct possession is notice to all the world of all the rights of the possessor, whether they be those of devisee or as the widow of testator. [Distinguishing Lincoln v. Thompson, 75 Mo. 613.]

Appeal from Pike Circuit Court. —*Hon. Edgar B. Wool-folk*, Judge.

REVERSED.

*Pearson & Pearson* for appellants.

(1) The will conveyed to and vested in the widow the absolute title in fee to the property described in

plaintiff's petition. Secs. 525, 537, R. S. 1909. The petition alleges, and the decree adjudges, such to be a fact. (2) The fact that the will was not probated immediately upon the death of the testator did not affect the title that was devised to the widow. The probating of a will relates back to the death of the testator, and vests title in the devisee from that time. The fact that a will under which a defendant claims title to land was not probated until after the bringing of a suit, is no objection to its admission in evidence. Bernard v. Bateman, 76 Mo. 415; Snuffer v. Howarton, 124 Mo. 640. By probating and recording the will, be it ever so many years after the death of the testator, the title to the property in the devisee under the will is perfected; and possession during all the years from the death of the testator gave notice to the world that she claimed title thereto. The statute nowhere fixes a time within which a will must be probated. It is only directory, as to recording the will; and fixes no penalty for delay in either probating or recording a will. Wolff v. Brown, 142 Mo. 617; Nichols v. Hobbs, 197 S. W. 260; Wilcox v. Moore, 199 S. W. 136. (3) Possession of property is prima-facie evidence, and actual and legal notice, of a claim of title; and any purchaser having knowledge of the possession of such property, is put upon inquiry. Schaeffer v. Detie, 191 Mo. 392; Keith v. Bingham, 100 Mo. 308. The testimony was uncontradicted that the respondent had known Mrs. Nichols and her husband since a long time before his death in January, 1903; that he knew that she was in the actual possession of the property, upon which he took a deed of trust to secure his alleged loan; knew that she had been in the actual, continuous and exclusive possession of the same since January, 1903; and, made no inquiry or investigation as to her claim of title. He stated that he had lived in the town of Frankford, which is within a mile and a half or two miles of this property, for many years. (4) If she had no other claim, Margaret Nichols' title to this property had ripened and vested by the Statute of Limitations. There was

no evidence that her twelve years' exclusive possession was otherwise than under a claim of ownership. The will, had it never been probated, was sufficient color of title to set the Statute of Limitations in motion. Shaeffer v. Detie, 191 Mo. 393.

*Jones & Corwine* and *Hostetter & Haley* for respondents.

(1) The continued occupancy by the widow of the "mansion house of the husband and the messuages or plantation thereto belonging," can have no such effect as is so stoutly and vehemently claimed for it by opposing counsel. Until dower be assigned she has the right to continue in the possession of such premises indefinitely. This right is expressly conferred on her by statute. Sec. 366, R. S. 1909. Nor is such possession hostile to the heirs, and, prior to the assignment of dower, no Statute of Limitations runs against the heirs, no matter how long the possession of the widow, or her grantee, may continue. Brown v. Moore, 74 Mo. 633; Melton v. Fitch, 125 Mo. 281; Westmeyer v. Gallenkamp, 154 Mo. 28; Fischer v. Siekmann, 125 Mo. 165. (2) Until a will is produced there is a presumption that the realty goes where the law casts it. Miller v. Speight, 61 Ga. 460; Adams v. Phillips, 132 Ga. 455. In order to charge purchasers and others with constructive notice of the conveyance of title by will, it is essential that a copy of the will duly probated should be recorded in the county where the land is situated. Borland on Wills, pp. 185-6; Wolf v. Brown, 142 Mo. 612; Rodney v. Landau, 104 Mo. 260; Keith v. Keith, 97 Mo. 223; Van Syckel v. Beam, 110 Mo. 589; Hartwell v. Parks, 240 Mo. 537-550; Farris v. Burchard, 242 Mo. 1; Wilson v. Wilson, 54 Mo. 215; Watson v. Alderson, 146 Mo. 333; Graves v. Ewart, 99 Mo. 13. Sec. 544, R. S. 1909, provides that a testator shall be deemed to have died intestate as to children not named in will. Section 584 confers on probate courts power to compel production of a will by summons and attachment. Title

to land will not pass by will which was never probated.
Snuffer v. Howerton, 124 Mo. 637; Smith v. Estes, 72
Mo. 310; Barnard v. Bateman, 76 Mo. 414. Section
566 requires wills devising lands to be recorded in
Recorder's office of county where the land is situated;
and when devised land is in different counties, then such
copy shall be recorded in each county within six months
after probate. In fact, the general legislative policy
discloses the existence of the doctrine that wills are to
be probated promptly; that no notice is imparted to
third persons until the will has been probated or re-
corded; and that it is the duty of persons in possession
of wills of deceased persons to promptly produce them
for probate or be subject to summons and attachment.
(3) Mrs. Nichols, by her conduct in wilfully concealing
the will, keeping it from probate for more than twelve
years, is in equity and good conscience estopped from
asserting any claim under the will against persons who
were lured by her acts to treat and deal with the prop-
erty as if her husband had died intestate. 2 Pomeroy's
Eq. Jur. (4 Ed.) sec. 802. The conduct of the widow
tended to accentuate the false idea that her husband
had died intestate. Clark v. Lewis, 215 Mo. 187; Boggs
v. Burton, 180 S. W. 402; 2 Pomeroy's Eq. Jur. (4
Ed.)' sec. 801. (4) The possession of the widow in
this case without probating the will for twelve and one-
half years, simply said to all the world that Josephr
Nichols died intestate and his widow is occupying his
mansion house and enjoying the messuages connecte
therewith until dower be assigned, and the heirs are
indulgent enough not to cause her dower to be assigned;
therefore she is lawfully entitled to hold possession
of all the premises, including the excess above the $1,500
homestead, and that the three daughters each own an
undivided one-third interest in the 120 acres, subject to
their mother's quarantine, homestead and unassigned
dower rights therein.

42—280 Mo.

SMALL, C.—This suit in equity was instituted in the Circuit Court of Pike County to vest title in an undivided two-thirds interest in 120 acres of land in said county in the plaintiff, subject to the dower rights of Margaret Nichols, as widow of Josephus Nichols, deceased, on the theory that, as to the plaintiff, said Josephus Nichols died intestate. Margaret Nichols and Dolly Seely are defendants.

Plaintiff alleges that said Josephus Nichols died at his residence on said land January 5, 1903. That he left surviving him his widow, the defendant Margaret Nichols, and his three daughters: Susan Foutes, wife of Andrew Foutes, since deceased; Nancy Foutes, wife of Edward Foutes; and Dolly Seely, wife of William H. Seely. That said Josephus Nichols died testate, and by his will devised the whole of the land to his widow. That as to all the world, except Mrs. Nichols and her daughters and their husbands, it appeared that said Josephus Nichols died intestate, and plaintiff had no knowledge to the contrary until the will was probated, which was July 26, 1915. That defendants and A. N. Foutes, then the husband of Susan Foutes, "combined, confederated and conspired" together to keep said will from being probated and its existence a secret, in order to deal with the land as if it belonged to the widow and her daughters under the laws of descent, and to defraud the plaintiff by inducing him to loan $875 on the two-thirds interests of Susan Foutes and Nancy Foutes. That in pursuance of such conspiracy, Susan Foutes and her husband, A. N. Foutes, conveyed her one-third interest to Edward Foutes, and Edward Foutes and his wife on March 28, 1911, borrowed $875 from the plaintiff, secured by a deed of trust on two-thirds interest in said land. The money not being paid when due the property was sold under the deed of trust, November 16, 1914, and bought in by William C. Smith for the plaintiff, who afterwards conveyed to the plaintiff. That defendant Margaret Nichols by keeping the existence of the will a secret from the plaintiff, aided Nancy Foutes and Edward Foutes "in the perpetration

of their skillful scheme to cheat and defraud the plaintiff as aforesaid.'' And that the will was probated March 26, 1915, and the property afterwards conveyed by Mrs. Nichols to her daughter Dolly Seely ''in furtherance of the scheme and conspiracy hereinbefore mentioned.''

The answer of the defendants admitted the death of Josephus Nichols, the making and probating of the will, and alleged that ever since his death defendant Margaret Nichols had been in the open and notorious possession, claiming to own said property under said will, and also by adverse possession of ten years. The answer also contained a general denial.

Plaintiff took the depositions of the defendants and read them at the trial as admissions.

In her deposition, defendant Margaret Nichols, testified: That she was 79 years old. That her husband died March 5, 1903. That they lived on this 120 acres until the time of his death. That he left three children at his death, Nancy, Susie and Dolly, all of them married, as stated in the petition. They lived with their husbands a mile or two away from the home place, except Mrs. Seely, who lived near Madisonville, about ten miles away. Mr. Brown wrote her husband's will. She was present, together with her daughter Susie, Andrew Foutes, Mr. Shaw and Dr. Burns. The will was made a week before her husband's death. She did not have the will probated because Mr. Brown said it was not worth while, that it was all hers any way, whether the will was probated or not. The probate judge, Judge Motley, and Governor Major also told her that it was not worth while to go to any expense in probating the will. Mr. Brown kept the will until just before he died, which was about two years before it was probated. She never knew of Edward Foutes buying any land from her daughter, Susie. She knew nothing about their borrowing money from the plaintiff until long after it was done. She never knew that her daughters claimed to own any interest in the land. She knew nothing about their transactions with each other or the plaintiff. She

says: "I didn't make any effort to learn anything, because they were mad at me and I didn't know what they were driving at. They never spoke to me about nothing. They never had nothing to do with me." Edward Foutes never told her that he wanted to buy the place from the girls. He never told her that Andrew Foutes' wife wanted to sell her interest to him. "I don't remember any such thing, because it never happened." She deeded the farm to her daughter, Dolly Seely, "because she helps support me and takes care of me, and does for me, and none of the rest did. She paid up the taxes and paid me some money." She, however, lived at home, and her daughter would come there to care for her. She was feeling very badly when her deposition was taken. She was suffering from a fall she got the week before. She was in misery all of the time. She got Pearson and Pearson to probate the will after Mr. Smith had brought suit against her, which was afterwards dismissed.

In her deposition, read by the plaintiff, Dolly Seely testified: She knew when her father died he left a will. So did the other members of the family. Brown had custody of the will. She knew the property had been left to her mother, but she did not know that her sisters knew it. She knew nothing about her sisters borrowing money on their supposed interests, until after they had borrowed it, nor of one of her sisters selling her interest to Edward Foutes, until after it was over, when her sister said she did it because her husband was sick and they were in need. She never discussed with her mother or sisters whether or not her sisters had any interest to sell. Nancy and Ed Foutes knew about the will.

Mrs. Susan Foutes and Mrs. Nancy Foutes also testified for the plaintiff. The substance of their testimony is that they knew Mr. Brown made some kind of a writing a few days before their father died, but they did not know it was a will. That their mother never told them that it was a will, and they never discussed with her whether they had any interest in the farm.

They never claimed to have any such interest to their mother. She always remained in possession of the farm, cultivating it and getting all of the proceeds, and she "just went on and managed the farm as her own." They thought they owned one-third interest each in the farm, when Mrs. Susan Foutes sold her interest to Edward Foutes, and when Edward Foutes and his wife borrowed the money from the plaintiff. . Mrs. Susan Foutes got $700 of this money for her third interest, besides a tract of land worth $300. The money was obtained from the cashier of the Exchange Bank of which plaintiff was president.

Edward Foutes testified for the plaintiff. He did not know that Josephus Nichols had made a will, but he learned of it afterwards through Mr. Brown. This was before he bought his sister-in-law's interest. He had never heard what was in the will. At the time of Josephus Nichols' death, he and his family lived at Frankford. But at one time, Mr. Brown, who had an adjoining forty acres, asked him to help him build a fence between his land and the land in question. Brown said he would furnish the materials, if he (Foutes) would do the work. "It is as much to your interest as mine," Brown said. And Brown further said: "You will have an interest in the place." That was all 'of the conversation he had with Brown. When he bought his sister-in-law's interest, he thought he was getting . what the deed called for. He had a conversation with his mother-in-law before he purchased from his sister-in-law. "Q. State what that conversation was? A. Well, I told her that Susie wanted to sell her part of the place, that they needed money, and that they had a buyer, and I don't know that I told her it was Mr. Cash or not, but anyhow, I told her likely I would buy it if I could. If I could. make arrangements to get the money, thought perhaps it would suit better. Q. Is that all that was said? A. No, sir; I think not. I think that she said they couldn't sell it and cited as a reason that she had redeemed this land. Seemed like her brother, William Wilson, when he was administrator

of the place, had given a bond and lost it or forfeited the property, and Joe Nichols had bid it in. I suppose you are more familiar than I am, it was in the probate court, but she claimed it under the right of redemption. Q. Did she say anything about a will of her husband's? A. Never mentioned the will to me in her life, not a word, said about the will. Q. Now, what did you give your sister-in-law Susie for her supposed one-third interest in the farm?. A. I think that she got six or seven hundred dollars, I wouldn't say which, and a piece of land, in consideration, that was between the two places."

On cross-examination this witness said that he had heard that his father-in-law made a will before he died, but had not heard until lately that he left the farm to his wife. Mr. Brown was a justice of the peace and was a neighbor. Mr. Brown told him that he had written the will. He did not ask about its contents. He did not tell the cashier what he knew or had heard about his father-in-law making a will. At the time he was trading with his sister-in-law he had heard that his father-in-law had made a will, but notwithstanding that, he went ahead and traded with her. He did not know why he did not tell the cashier what he had heard about the will. He did not think anything about it. The cashier said "he knew more about it than I did." The conversation with his mother-in-law took place at her home a few days before he purchased his sister-in-law's interest. No one was present with them. Q. And you think you told your mother-in-law that you were figuring on buying Susie's interest. A. Yes, sir. Q. And your mother-in-law told you that Susie could not sell her interest? A. Yes, sir. That is what she said. Q. Nothwithstanding your mother-in-law told you that, you went ahead and bought it anyhow? A. Yes, sir."

The testimony of other witnesses for the plaintiff, Jesse B. Jones and the plaintiff himself, shows that plaintiff loaned the money to Foutes in good faith without any actual notice of the will, after examining the records of the probate court. That plaintiff had lived

at Frankford within a stone's throw of the property and had known the Nichols family and property practically all of his life. He knew that Mrs. Margaret Nichols was in possession, but that neither the plaintiff nor any one for him inquired of her as to her rights in the property or said anything to her about the transaction with her daughter or her son-in-law, Foutes. It further appeared that William Seely, husband of Dolly Seely, defendant, bid $600 on the property at the trustee's sale, but that it was sold to Mr. Smith for the plaintiff for $900.

Defendants introduced in evidence the petition in the case of Smith v. Margaret Nichols et al. It was a suit to have the land sold in partition. Plaintiff Smith alleged he owned two-thirds interest and the defendant, Dolly Seely, owned one-third interest, subject to the dower of the defendant Margaret Nichols, who the petition alleged had, since her husband's death, been in the open, notorious and exclusive possession adversly to all the world except as to the plaintiff, his grantors and Dolly Seely.

The defendants were not present at the trial and offered no testimony, other than their depositions.

The court found for the plaintiff, and decreed that he had a lien upon an undivided two-thirds interest in said real estate for the amount of money he had loaned thereon, together with interest, because, as found by the court, "the defendant, Margaret Nichols, had at the time of such transaction, knowledge of the conveyances made by her two daughters, as aforesaid, and of the fact that plaintiff was loaning money on the apparent title which said daughters owned in said real estate, based on the apparent intestacy of Josephus Nichols, and that the plaintiff had no knowledge of the existence of such unprobated will." The court further ordered that the undivided two-thirds interest in said real estate be sold, subject to such rights as said Margaret Nichols would have therein in the event of her husband, Josephus Nichols, having actually died intestate, viz.,

homestead, dower and quarantine right.    Defendants duly appealed to this court.

I.  The evidence wholly fails to sustain the allegations of fraud and conspiracy charged against the defendants or either of them.  The burden of proof in such cases is upon the plaintiff to make out his case by clear and convincing evidence.  While fraud may be inferred from facts and circumstances, it is never to be presumed without or against the evidence.  And where the transaction under consideration may as well consist with honesty and fair dealing, as with a fraudulent purpose, it is to be referred to the better motive.  [Garesché v. MacDonald, 103 Mo. 1; Hardwicke v. Hamilton, 121 Mo. 465; Warren v. Ritchie, 128 Mo. 311.]  Viewed in the light of these rules, we are constrained to find from the record that all of her daughters, and both of her sons-in-law, Andrew and Edward Foutes, knew that the property had been devised to Mrs. Nichols by their father's will before Mrs. Andrew Foutes made her deed to Edward Foutes, and that Mrs. Nichols never told Edward Foutes that she claimed to own the property under a right of redemption, and never said to him that her daughter could not sell her interest for that reason.  Indeed, the petition itself, in effect, alleges that all of her daughters and sons-in-law knew the will devised the property to her, and conspired with her to suppress all knowledge of its existence, so as to mislead and defraud the public and plaintiff.  And the petition further alleges that the deed from Mrs. Andrew Foutes to Edward Foutes was made and the loan from the plaintiff secured by Edward Foutes in pursuance of said conspiracy.  The evidence totally fails to prove any such conspiracy, so far as the defendants are concerned, but all tends to disprove it.

We are also satisfied that Mrs. Nichols never wilfully withheld the will of her husband from probate for any such sinister purposes as alleged in the petition.  She gave the will to Mr. Brown, the justice of the peace who wrote it, and advised with him as to probating it, and

*Margin label: Conspiracy.*

he informed her it was not necessary to do so, that the property was hers just as well without being probated. The probate judge, Judge Motley, and Mr. Major, afterwards Governor Major, whom she also consulted, gave her similar advice. If this venerable mother intended to commit a wrong or defraud the plaintiff or the public by secreting the existence of the will, would she have gone to these public officials to advise her in regard to probating it? But it is not necessary to prolong the discussion of this branch of the case. Suffice it to say, that there is in this record not even the breath of suspicion of wrong-doing on the part of Mrs. Nichols in failing to probate and record the will, or that she ever knowingly stood by and allowed her daughters to deal with the property as their own, or had any knowledge of plaintiff's transactions with her daughters and sons-in-law until subsequent thereto.

II. The claim of title by the defendants by adverse possession must be denied, because the property was the homestead of Josephus Nichols, and dower had never been assigned to the widow, and the daughters were married women when their father died, two

**Limitations.** of them remaining so until the trial, and the husband of the other had not been dead for ten years before that time.

III. As to the title of Mrs. Nichols under her husband's will. It is true, as asserted by respondent's learned counsel, that title to land does not pass by will until the will is probated. [Snuffer v. Howerton, 124 Mo. 637.] But it is equally true that title does pass upon the probating of the will and

**Title of Devisee: Possession as Notice.** relates back and takes effect as of the time of the testator's death. [Barnard v. Bateman, 76 Mo. l. c. 415; Wilson v. Wilson, 54 Mo. 213.] Our statute no where fixes a time within which a will must be probated after the testator's death, nor is there any provision making a will void until it is probated. A sheriff's sale does not pass title until

a sheriff's deed is made and acknowledged as required by the statutes. Yet, upon the making, acknowledgment and delivery of the sheriff's deed, it relates back and conveys title as of the inception of the lien of the execution or judgment, except as to intervening innocent purchasers, that is, purchasers without notice of the sheriff's sale. [Strain v. Murphy, 49 Mo. 337; Leach v. Koenig, 55 Mo. 451; Lewis v. Cury, 74 Mo. 49; Land & Lumber Co. v. Franks, 156 Mo. l. c. 689.] The same rule must apply to wills. Upon their being probated they relate back to the death of the testator and eliminate all intervening purchasers who had notice, actual or constructive, of the will. In this case the plaintiff had no actual knowledge of the will. So that the sole question for our decision is whether he had constructive notice of it by reason of the open possession, to his knowledge, of the property by Mrs. Nichols, at and before the time he made his loan to the Foutes. Respondent's learned counsel do not deny that such possession and knowledge thereof by the purchaser would generally charge the purchaser with notice of the title of the party in possession, but they contend that this should not be so in this case, because plaintiff knew that Mrs. Nichols was the widow of Josephus Nichols, and occupied the homestead and, therefore, he had a right to attribute her possession to her right as widow, and was not bound to inquire as to any other right she might have in the property. No authorities are cited in support of the suggestion of learned counsel; but we find that in some other jurisdictions there are exceptions to the general rule, and one is, that when a tenant goes into possession under a lease and afterwards buys the landlord's title and fails to put his deed on record, but remains in possession under circumstances not sufficient to attract attention to the change of his former title, his possession is not notice to third parties of his title under his deed from the landlord. [2 Devlin on Deeds, p. 1412, sec. 770, citing among other cases, Lincoln v. Thompson, 75 Mo. 613.] But the author closes the discussion, in support of which he cites

many authorities, by saying (Id.): "But the proper rule seems to be that possession should be held to be notice of all the rights of the party in possession, when that possession is open, visible, exclusive, distinct and unequivocal." Pomeroy's Eq. Jur., Vol. 2, sec. 616, also notes the same distinction and says of the cases holding that such exception is not well founded (note 2): "In my opinion these decisions are much more in harmony with the general doctrine than those others which have drawn refined distinctions upon the amount of notice derived from the occupant's original right to the possession. The reasons upon which the whole doctrine rests seem to be conclusive. The possession of a third person is said to put a person upon an inquiry; and he is charged with notice of all of that he might have learned by a due and reasonable inquiry. Clearly a purchaser, who is thus put upon inquiry, is bound to inquire of the occupant with respect to *every* ground, source and right of his possession; anything short of this would clearly fail to be the 'due and reasonable inquiry' " citing numerous cases. But we do not regard the case in hand as coming within the exception which these learned authors say is not supported in principle, nor by weight of authority. The reason for the exception is lacking here. In this case Mrs. Nichols' rights as devisee and widow were cast upon her at the same instant by the death of her husband, so that it cannot be said that she went into possession under one right or claim and afterwards acquired another. We hold, therefore, that the law in this State is that open, exclusive, separate and distinct possession such as is shown here to have been in Mrs. Nichols, after the death of her husband, is and was notice to the world of all of her rights, those as devisee of her husband, as well as those cast by the law upon her as his widow. In the case of Lincoln v. Thompson, 75 Mo. 613, above noted, the remarks of the court tending to support the exception to the general rule above mentioned, the wife had not been in exclusive possession, nor possession at all. The possession had been in her hus-

band. The remarks of the court were therefore *obiter*.
On the other hand, in Davis v. Briscoe, 81 Mo. l. c. 37,
this court, per PHILLIPS, C., quoting Buck v. Holloway,
2 J. J. Marsh. (Ky.) 180, said: "The only sensi-
ble rule is, that actual residence upon the land is notice
to all the world of every claim which the tenant may
legally assert in defense of his possession." The Su-
preme Court of Kentucky, thus quoted with approval,
further added: "We cannot split up the claims under
which the tenants in possession may hold, in this man-
ner, for the benefit of those who purchase over their
heads."

The rule that open and unequivocal possession of
land gives notice to the world of the rights of the oc-
cupant, as fully as actual notice or record of the muni-
ments of title, has always been the law of this State.
[Bartlett v. Glasscock, 4 Mo. 62; Leavitt v. LaForce,
71 Mo. l. c. 357; Masterson v. Railroad, 72 Mo. l. c.
342; Davis v. Briscoe, 81 Mo. 27; Ins. Co. v. Smith,
117 Mo. 261; Desteiguer v. Martin, 162 Mo. 417; Myers
v. Schuchmann, 182 Mo. 159; Shaffer v. Detie, 191
Mo. l. c. 393; Stuart v. Ramsey, 196 Mo. l. c. 415;
Squires v. Kimball, 208 Mo. 119; Stone v. Railroad,
261 Mo. l. c. 76; Titus v. Development Co., 264 Mo. l.
c. 245.]

In Shaffer v. Detie, 191 Mo. l. c. 393, this court,
per LAMM, J., says: "But it is strenuously urged by
appellant that the proof showed no notice to him; and
that he was an innocent purchaser. The record bears
ear-marks indicating all of the parties resided in New
Madrid County and hence no question of non-residence
is in the case. We assume appellant's contention is
based on the doctrine that under our registry acts a
deed should be recorded in order to impart notice. But
visible possession of real estate, with acts of dominat-
ing control, improvements, the continuous cultivation
of the land, etc., are as potential in imparting notice
of a claim of title as the record of a deed. One may
not be allowed to blindfold himself to the visible indices
of ownership, such as abound in this case, and say that

he had no notice.   To this effect has always been the law in Missouri. [Bartlett v. Glasscock, 4 Mo. 62; Davis v. Briscoe, 81 Mo. 27.]   And such is the general doctrine.   [2 Dev. on Deeds (2 Ed), secs. 760 and 769.] The possession of J. C. Morehead was continuously perpetuated down to the day of the trial under the chain of title relied upon by the respondents, and it became either actual notice or put appellant on inquiry and he is impaled on either horn of the dilemma.''

And in Squires v. Kimball, 208 Mo. 119, this court, per Fox, J., says: ''It is no longer an open question in this State that a person who buys property in the visible possession of a third person is chargeable with notice of the title and right of that person to the premises.''

We hold that under the facts and circumstances shown in the case, the circuit court erred in not rendering judgment for the defendants.   We therefore reverse the case with directions to the lower court to set aside the judgment rendered for the plaintiff and enter up judgment for the defendants.

*Brown* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion of SMALL, C., is adopted as the opinion of the court.   All of the judges concur, *Bond, J.,* in the result.